[No. 13967-7-II.    Division Two.    April 2, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. MANUEL
ALVARADO SANCHEZ, *Respondent.*

*C.C. Bridgewater, Prosecuting Attorney,* and *Douglas S. Boole, Deputy,* for appellant.

*Edward J. Putka* and *Putka, Styve & Mottet,* for respondent.

MORGAN, J. — The State appeals an exceptional sentence below the standard range. We affirm.

After Kathy Thomas was arrested and charged with delivery of cocaine, she agreed to become an informant for the Cowlitz-Wahkiakum County Drug Task Force. She was to make several purchases of drugs, then testify against each defendant. In exchange, the charges against her would be dismissed.[1]

The task force showed Thomas several pictures in order to identify persons from whom she might buy cocaine. One portrayed Manuel Alvarado Sanchez. Thomas selected Sanchez's picture and said he had told her that if she ever needed cocaine, she should come to him.

On August 15, 1989, the task force arranged for Thomas to make a "controlled buy" from Sanchez. An officer picked Thomas up, ascertained she was not carrying any drugs or money, and gave her $110 with which to buy one-sixteenth ounce of cocaine. He then dropped her off near Sanchez's home, and watched her enter the home. Inside the home, Thomas asked Sanchez for one-sixteenth ounce of cocaine and gave him the $110. She then complained that the bindle

---

[1] Ultimately, Thomas completed her part of the bargain, and the charges against her were dismissed.

he gave her did not contain enough cocaine, so Sanchez returned $30. After leaving the home, Thomas delivered the bindle and the $30 to the officer.

The task force arranged for second and third controlled buys about a week later. On August 22, Thomas purchased one-eighth ounce for $150. On August 23, she purchased another one-eighth ounce for $140.

In December, the State charged Sanchez with three counts of delivery of cocaine. At trial, Sanchez testified through an interpreter. He stated he could not read or write, did not know how to spell his name, had completed only 1 year of schooling, and did not understand English very well, "just maybe once every other word."

The jury returned guilty verdicts on all three counts. At sentencing, the State asked for a sentence within the standard range. It correctly calculated that even though Sanchez had no criminal history, he had six current offense points and a standard range of 67 to 89 months.[2] RCW 9.94A.360(13); RCW 9.94A.400(1)(a); RCW 9.94A.310-.320. Sanchez asked for an exceptional sentence below the standard range.

The judge imposed exceptional sentences of 36 months on each count, the sentences to run concurrently. Apparently inferring that the second and third buys had been arranged primarily to increase Sanchez's offender score and presumptive sentence, he remarked orally:

> [W]e could put this score off the top of the chart any time we want to because, obviously, once he has a predisposition to deliver, you send the same purchaser back there, it's just a question of when do you want to stop. You could send that

---

[2]RCW 9.94A.360(13) provides that when a present conviction is for a drug offense, each prior adult felony drug offense counts three points. RCW 9.94A.400-(1)(a) provides that "whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score . . .." Thus, Sanchez had no points for prior offenses, but six points for current offenses (which counted as if they were prior offenses). When an offender is convicted of delivery of cocaine and has a score of six, the standard range is 67 to 89 months. RCW 9.94A.310-.320.

same purchaser back there in a three day period of time, probably ten times . . .[.]

The judge also entered written findings in support of the exceptional sentence. He found:

1. Defendant has limited education, completing only the first grade.
2. The deliveries involved small amounts of cocaine delivered to the same person over a brief period of time.
3. The police had complete control over the number of deliveries.

The standard of review for an exceptional sentence is set forth in RCW 9.94A.210(4):

To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

The State does not argue that the 36-month sentence imposed on Sanchez was clearly too lenient. Consequently, we confine our review to RCW 9.94A.210(4)(a), which contains two parts.

■ The first part requires this court to decide whether the sentencing judge's reasons for imposing the exceptional sentence are supported by the record. Because this is a factual determination, we must uphold the reasons unless they are clearly erroneous. *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991); *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990); *State v. Pennington*, 112 Wn.2d 606, 608, 772 P.2d 1009 (1989); *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986).

Sanchez testified that he had only finished 1 year of school and that he was unable to read, write, or spell his name. Thus, the record supported the sentencing court's first reason for granting an exceptional sentence.

Two police officers and Thomas testified that all three deliveries were made to Thomas; that all three deliveries occurred between August 15 and 23, 1989, and that all three

deliveries involved one-sixteenth or one-eighth ounce of cocaine. These deliveries involved small amounts of drugs delivered to the same person over a brief period of time, and it was reasonable to infer that once Thomas made the first controlled buy, she and the police had the practical ability to arrange as many additional controlled buys as they chose.[3] Thus, the record supported the sentencing court's second and third reasons for imposing an exceptional sentence.

█ The second part of RCW 9.94A.210(4)(a) requires this court to independently determine, as a matter of law, whether the sentencing judge's reasons justify the imposition of an exceptional sentence. *Estrella*, 115 Wn.2d at 357; *Pennington*, 112 Wn.2d at 609; *Nordby*, 106 Wn.2d at 518. These reasons must be "substantial and compelling", RCW 9.94A.120(2); *Allert*, 117 Wn.2d at 163-64; *Pennington*, 112 Wn.2d at 609; *Nordby*, 106 Wn.2d at 518, and cannot duplicate factors already considered in computing the standard range. *Estrella*, 115 Wn.2d at 354; *Nordby*, 106 Wn.2d at 518 n.4. RCW 9.94A-.390 sets forth some of the reasons that will be regarded as substantial and compelling. *State v. Pryor*, 115 Wn.2d 445, 450-51, 799 P.2d 244 (1990); *Estrella*, 115 Wn.2d at 357; *Nordby*, 106 Wn.2d at 516.

█ As already seen, the first reason used by the sentencing court was Sanchez's limited education. In *State v. Rogers*, 112 Wn.2d 180, 185, 770 P.2d 180 (1989) (educational level) and *State v. Altum*, 47 Wn. App. 495, 505-06, 735 P.2d 1356 (alleged learning disability), *review denied*, 108 Wn.2d 1024 (1987), there was no evidence that the defendant's education level or alleged learning disability had significantly impaired his capacity to conform his conduct to the requirements of the law. As a result, both courts refused to characterize education level or learning disability as a mitigating factor within the meaning of RCW 9.94A.390(1)(e). Similarly in this case, Sanchez presented no evidence that his limited

---

[3]It was also reasonable to infer that the second and third buys were made primarily to increase Sanchez's offender score and presumptive sentence, for there is no indication that the second and third buys were arranged for any other reason.

education impaired his capacity to conform his conduct to the requirements of the law, and we hold that his education level, without more, does not constitute a substantial and compelling reason for an exceptional sentence.

■ The second and third reasons used by the sentencing court were that Sanchez's offenses involved small amounts of cocaine delivered to the same person over a short period of time, and that the police were in "control" of the number of offenses, in the sense that they initiated all three controlled buys. Essentially, the sentencing court held that these reasons caused the standard range to be "clearly excessive" within the meaning of RCW 9.94A.390(1)(g). That statute allows an exceptional sentence downward when:

> The operation of the multiple offense policy of RCW 9.94A-.400 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

Without question, Sanchez's presumptive sentence was the result of the multiple offense policy in RCW 9.94A.400. But for the operation of that policy, he would not have had a presumptive sentence of 67 to 89 months. RCW 9.94A.360(13); RCW 9.94A.400(1)(a); RCW 9.94A.310-.320.

The issue is whether the multiple offense policy in RCW 9.94A.400 caused Sanchez's presumptive sentence to be "clearly excessive". The Supreme Court has never interpreted RCW 9.94A.390(1)(g); however, RCW 9.94A.390(1)(g) is the mirror image of RCW 9.94A.390(2)(g),[4] and the Supreme Court interpreted RCW 9.94A.390(2)(g) in *State v. Batista*, 116 Wn.2d 777, 808 P.2d 1141 (1991). In *Batista*, the court

> identified two factual bases, either of which may support reliance on RCW 9.94A.390(2)(f):[5] (1) "egregious effects" of defendant's multiple offenses and (2) the level of defendant's culpability resulting from the multiple offenses. Each of these factual

---

[4]RCW 9.94A.390(2)(g) provides that an exceptional sentence upward may be imposed when:

"The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010."

[5]Now codified as RCW 9.94A.390(2)(g). *See* Laws of 1990, ch. 3, § 603.

bases must be beyond what is accounted for in presumptive sentencing, in accord with the requirement that any factor used in calculating the presumptive range may not be relied upon as an aggravating factor.

*Batista,* 116 Wn.2d at 787-88.

Necessarily, *Batista*'s reasoning applies to RCW 9.94A-.390(1)(g) as well as to RCW 9.94A.390(2)(g). If a sentence under RCW 9.94A.390(2)(g) is justified by effects that are egregious, it follows that a sentence under RCW 9.94A-.390(1)(g) is justified by effects that are nonexistent, trivial or trifling.

The effects of the first controlled buy were not trivial or trifling. Indeed, the sentencing judge did not find that they were, for he imposed a sentence greater than the presumptive sentence for one delivery.

In analyzing RCW 9.94A.390(1)(g), however, we do not focus on the effects of the first buy; those effects would have occurred even if the first buy had been the sole offense, and even if the multiple offense policy had been totally inapplicable. Instead, we focus on *the difference* between (a) the effects of the first buy alone and (b) the cumulative effects of all three buys. It is this difference, if any, that the multiple offense policy is designed to take into account. If it can be shown that this difference is nonexistent, trivial or trifling, the multiple offense policy should not operate; rather, the sentencing judge should be permitted to give an exceptional sentence downward on grounds that the "operation of the multiple offense policy . . . results in a presumptive sentence that is clearly excessive". RCW 9.94A.390(1)(g).

In this case, the difference between the first buy, viewed alone, and all three buys, viewed cumulatively, was trivial or trifling. All three buys were initiated and controlled by the police. All three involved the same buyer, the same seller, and no one else. All three occurred inside a residence within a 9-day span of time. All three involved small amounts of drugs. The second and third buys had no apparent purpose other than to increase Sanchez's presumptive sentence. We conclude, as the sentencing court apparently did, that the second and third buys added little or nothing to the first.

Because the difference between the first buy and all three buys was trivial or trifling, the sentencing judge was permitted to use RCW 9.94A.390(1)(g) in order to reconcile (1) the absence of additional effects from the second and third buys with (2) the multiple offense policy of RCW 9.94A.400(1)(a). Thus, the sentencing judge did not err when he imposed a sentence greater than the standard range for one delivery, but less than the standard range for three deliveries.

Nothing in this holding is inconsistent with *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990). There, the defendant made three deliveries and one attempted delivery of marijuana to the same police informant in the same parking lot over a period of 19 days. He was subsequently convicted of four counts of delivery, and all four were factored into his offender score. *Lewis*, 115 Wn.2d at 296-97. On appeal, the defendant argued that these four criminal acts constituted the same criminal conduct under RCW 9.94A.400(1)(a), and thus should not have been factored into his offender score. The Supreme Court disagreed, holding that the prosecutor has discretion to determine the number of charges to be brought. *Lewis*, 115 Wn.2d at 297-304.

In the instant case, we recognize that Sanchez's three convictions for delivery do not encompass the same criminal conduct and that all three must be factored into his offender score, which is then used to determine his standard sentencing range. We also recognize that the prosecutor has discretion to choose the number of charges. We merely hold that although the prosecutor has discretion to charge and obtain convictions on multiple controlled buys, the sentencing court has power to determine whether the resulting standard range sentence is "clearly excessive" as a result of the multiple offense policy in RCW 9.94A.400. If it is, the sentencing court has power to grant an exceptional sentence downward, pursuant to RCW 9.94A.390(1)(g).

Nothing in our holding necessarily applies to drug transactions that are not police-initiated controlled buys, or that involve different sellers or purchasers, or that involve large quantities of drugs, or that have a law enforcement purpose

other than to generate an increase in the offender's standard range. None of those fact patterns is present here.

■ We do not remand for resentencing, even though we have invalidated the sentencing judge's first reason for giving an exceptional sentence. A reviewing court that invalidates some but not all of a sentencing court's reasons need not remand the case for resentencing if it is confident that the sentencing court would reimpose the same sentence upon remand. *See, e.g., State v. Post*, 118 Wn.2d 596, 616-17, 826 P.2d 172 (1992); *State v. Dunaway*, 109 Wn.2d 207, 219-20, 743 P.2d 1237, 749 P.2d 160 (1987); *State v. Tunell*, 51 Wn. App. 274, 284, 753 P.2d 543, *overruled on other grounds in State v. Batista*, 116 Wn.2d 777, 808 P.2d 1141 (1991), *review denied*, 110 Wn.2d 1036 (1988). Because we are confident of that here, we affirm the sentence.

ALEXANDER, C.J., and SEINFELD, J., concur.

Review denied at 122 Wn.2d 1007 (1993).