[No. 32979-1-I.   Division One.   December 30; 1994.]

THE STATE OF WASHINGTON, *Appellant*, v. MELVIN KENNETH HORTMAN, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Terri Rae Luken, Deputy,* for appellant.

*Miriam Feuer Schwartz* of *Seattle-King County Public Defender Association,* for respondent.

KENNEDY, J. — The State of Washington appeals the trial court's imposition of an exceptional sentence below the standard range, contending that the trial court erred in applying the rationale of *State v. Sanchez,* 69 Wn. App. 255, 848 P.2d 208, *review denied,* 122 Wn.2d 1007 (1993). The State asks this court to reject *Sanchez,* arguing that the decision is legally unsound, that it allows trial courts to dictate police investigatory procedures which do not amount to misconduct and do not violate due process, and that it impermissibly allows trial courts to restrict prosecutorial discretion. We find *Sanchez* to be legally and jurisprudentially sound. The proper exercise of judicial discretion as contemplated by the Sentencing Reform Act of 1981 (SRA) neither dictates police investigatory procedures nor restricts prosecutorial discretion. There being no error in the trial court's application of *Sanchez* in sentencing Mr. Hortman, we affirm.

FACTS

In January and February 1993, King County police commenced an undercover investigation of narcotics trafficking

in the apartments above the El Casino tavern, located in the White Center area of King County. On February 2, 1993, Officer Mark Christianson and a confidential informant went to the apartments to attempt to purchase controlled substances. Officer Christianson was successful in purchasing rock cocaine from Melvin Hortman, a resident at the apartments, on that occasion. Hortman has never been charged with this delivery.

On February 4, 1993, Officer Christianson, again posing as a narcotics buyer, returned to the apartments with Officer Crenshaw. Inside the apartment building the officers were approached by Hortman, who offered to sell Officer Crenshaw cocaine. The three went to Hortman's apartment where Officer Crenshaw gave Hortman $20 of police buy-money in exchange for a rock of cocaine. Crenshaw was wired for sound during this transaction. Hortman was not arrested.

Finally, on February 17, 1993, Officer Christianson returned to the apartments, this time alone, still posing as a narcotics buyer, and wired for sound. Another resident of the apartments agreed to sell the officer heroin and let him into the apartment hallway to wait for the heroin. While he was waiting, Officer Christianson knocked on Hortman's apartment door. Hortman answered the door and invited the officer inside. Christianson asked for a "twenty". Hortman said he did not have any rock cocaine, but could get some. Hortman left the apartment and returned a short time later with one rock of cocaine, which he sold to Officer Christianson in exchange for $20 of police buy money.

On March 3, 1993, Hortman was charged by information with two counts of delivery of cocaine, for the transactions of February 4 and 17, 1993.[1] In its omnibus application, the State indicated its intention to amend the information to add a third count of delivery and the school zone sentence enhancement allegation. Thereafter, Hortman and the State

---

[1] By separate information, Hortman was charged with possession of cocaine, occurring in January 1993. This charge was dismissed as part of the plea bargain hereinafter described.

entered into a plea bargain whereby Hortman pleaded guilty to the two counts of delivery as charged in the information and the State agreed not the amend the information.

Because he had prior convictions and two current offenses, Hortman approached sentencing with an offender score of 7, making his standard range sentence 77 to 102 months. The State recommended a sentence of 77 months. Hortman requested an exceptional sentence below the standard range, pointing out the similarity between the facts in his case and those in *Sanchez*[2] and arguing that the multiple offense policy of RCW 9.94A.400[3] resulted in a standard range sentence which was clearly excessive.

The State opposed the imposition of an exceptional sentence, arguing that *Sanchez* was distinguishable. In *Sanchez*, 69 Wn. App. at 261, Division Two of this court (in the course of affirming an exceptional sentence downward based on the trial court's determination that the second and third buys had been arranged primarily to increase Sanchez's offender score) focused on the difference between the egregious effects of the first buy alone and the cumulative egregious effects of all three buys:

> It is this difference, if any, that the multiple offense policy is designed to take into account. If it can be shown that this difference is nonexistent, trivial or trifling, the multiple offense policy should not operate; rather, the sentencing judge should be permitted to give an exceptional sentence downward on grounds that the "operation of the multiple offense policy . . . results in a presumptive sentence that is clearly excessive". RCW 9.94A.390(1)(g).

The *Sanchez* court went on to say that nothing in its holding necessarily applies to police-controlled drug transactions

---

[2]In *Sanchez*, the police conducted three controlled buys of small amounts of cocaine over a 9-day period and the State charged Sanchez with all three deliveries. *Sanchez*, 69 Wn. App. at 256-57. Here, the police conducted three controlled buys of small amounts of cocaine over a 15-day period and the State charged Hortman with the last two deliveries, which occurred 13 days apart.

[3]RCW 9.94A.400(1)(a) provides in part:
"Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score".

"that have a law enforcement purpose other than to generate an increase in the offender's standard range." *Sanchez*, 69 Wn. App. at 262-63. Thus, the State argued below that the multiple buys from Hortman had a law enforcement purpose other than to generate an increase in Hortman's standard range, namely, to rebut any potential entrapment defense.

The trial court rejected the State's argument. Relying on *Sanchez*, the court imposed an exceptional sentence downward of 54 months — the high end of a standard range sentence taking into account Hortman's prior convictions but not applying the multiple offense policy to the two current offenses.

The trial court then entered the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT
. . . .
2. Each delivery involved the sale of a small amount, specifically $20.00 worth of cocaine to undercover Seattle Police Officer Christianson.
3. Both deliveries were made from the same location, defendant's residence.
4. In both cases, the purchases were controlled by the police in that the undercover officer solicited the sale.
5. The sales were made 13 days apart.
6. The second buy had no apparent purpose other than to increase the defendant's presumptive range.

### II. CONCLUSIONS OF LAW
1. The above facts resulted in a standard range which, due to the operation of the multiple offense policy, results in a sentence which is clearly excessive in light of the purposes of the Sentencing Reform Act as expressed in RCW 9.94A.010.
2. The difference between the effects of the first delivery and the cumulative effects of the two deliveries are so minimal as to be trivial.

Clerk's Papers, at 42-43.

The State did not renew its objection to the exceptional sentence at the time of entry of the trial court's written findings and conclusions. Instead, in response to the trial court's inquiry as to whether the State had any objection to the proposed findings and conclusions as prepared and sub-

mitted by defense counsel, the State specifically objected only to finding 6.

This timely appeal followed.

## DISCUSSION

We first dispose of Hortman's contention that the State is not entitled to appeal the exceptional sentence because the State failed to object to the imposition of an exceptional sentence at the time of entry of the written findings of fact and conclusions of law. Hortman contends that, because the State failed to renew its objection, it did not preserve its right to appeal, citing *State v. Wiley*, 63 Wn. App. 480, 483, 820 P.2d 513 (1991) (State required to object to exceptional sentence "in the trial court" in order to preserve error for appeal where trial court did not act in excess of its jurisdiction under SRA).

■ Hortman is mistaken. The *Wiley* court did not hold that a party must renew its objection at the time findings of fact and conclusions of law are entered in order to preserve review. Here, the State made its objection to the application of *Sanchez* during its argument at the sentencing hearing. The trial court had adequate opportunity to consider the State's objection prior to its ruling. Nothing would be gained, therefore, by requiring the State to renew its objection at the time the court entered its findings of fact and conclusions of law.

We next address the State's contention that *Sanchez* is legally unsound. The State points to *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990), wherein our Supreme Court rejected the defendant's argument that the trial court erred in refusing to dismiss duplicative counts of delivery of marijuana. Lewis sold marijuana to a police informant three times. He was arrested as he attempted to make a fourth delivery. Thereafter, search warrants were issued for three of Lewis' residential properties. Grow operations were seized at each residence. Lewis was charged with three counts of delivery, one count of attempted delivery and three more counts for the grow operations. He argued that the police decision to set up three con-

trolled buys before arresting him at the fourth buy was governmental misconduct, and that the trial court should have exercised its authority under CrR 8.3(b) to dismiss the duplicative charges. *Lewis*, 115 Wn.2d at 298. Lewis also argued that the prosecutor's charging decision violated the doctrine of separation of powers, by usurping the legislative power to set sentencing ranges and by usurping the judicial power to retain structured discretion in sentencing by manipulating the number of counts to raise the defendant's offender score. *Lewis*, 115 Wn.2d at 304.

Our Supreme Court's rejection of these arguments is fully explained in *Lewis* and need not be explained here, except to state that the court soundly affirmed the principles of prosecutorial discretion and the role of charging decisions in securing the integrity of the SRA sentencing framework. *Lewis*, 115 Wn.2d at 307. This being so, the State argues that, although the issue of a trial court's authority to impose an exceptional sentence below the standard range in view of the effect of the multiple offense policy was not before the *Lewis* court; *Lewis* nevertheless makes it clear "that multiple offenses should be scored separately. Accordingly, the appropriate presumptive standard range should be imposed." Br. of Appellant, at 30.

As did the *Sanchez* court, 69 Wn. App. at 262, we reject the State's argument. *Lewis* and *Sanchez* are not in conflict. The structured discretion granted to trial courts under the SRA to impose exceptional sentences upward or downward is not in conflict with the prosecutorial discretion granted under the SRA.

> [*Sanchez*] merely hold[s] that although the prosecutor has discretion to charge and obtain convictions on multiple controlled buys, the sentencing court has power to determine whether the resulting standard range sentence is "clearly excessive" as a result of the multiple offense policy in RCW 9.94A.400. If it is, the sentencing court has power to grant an exceptional sentence downward, pursuant to RCW 9.94A.390(1)(g).

*Sanchez*, 69 Wn. App. at 262.

We do not read *Sanchez* as a comment on overzealous police conduct. An exceptional sentence downward under

RCW 9.94A.390(1)(g) is not imposed as "punishment" to the State for police investigative decisions or for prosecutorial charging decisions. Neither does such a sentence "dictate" police conduct or prosecutorial discretion. The court's role in these situations is to focus on the difference, if any, between the effects of the first controlled buy and the cumulative effects of subsequent controlled buys. Where that difference is nonexistent, trivial or trifling, there is a basis in law for an exceptional sentence downward. *Sanchez,* 69 Wn. App. at 261. The prosecutor's charging decision does not dictate the result of this independent judicial inquiry.

Turning now to the case at hand, we inquire first whether the reasons given by the sentencing judge are supported by the record. RCW 9.94A.210(4); *State v. Allert,* 117 Wn.2d 156, 163, 815 P.2d 752 (1991). The State argues that the record does not support finding of fact 2, that both charged deliveries were made to Officer Christianson. The State points out that the first charged delivery (on February 4) was made to Officer Crenshaw, whereas the second charged delivery (on February 17) was made to Officer Christianson. The State seemingly forgets that Officer Christianson was an integral part of the delivery on February 4. Christianson, with the help of a confidential informant, successfully purchased cocaine from Hortman on February 2. Having thus established his bona fides, Christianson then accompanied Crenshaw to Hortman's apartment, 2 days later, where Crenshaw was also able to purchase cocaine from Hortman. The trial court's finding that both charged sales were made to Officer Christianson is not clearly erroneous.

The State also challenges the support in the record for finding of fact 4, that both charged deliveries were "controlled" by the police. The State argues that these buys were not induced by elaborate police subterfuge; they were routine purchases from a clearly willing seller. Again, the State appears to equate the findings of the sentencing courts in *Sanchez* and in this case with findings of police misconduct. We see no misconduct or overreaching by the police in either case and do not so interpret *Sanchez.* The point made by the

sentencing judges in both cases was that the police, once they discovered the defendants' predisposition to sell drugs, had control over how many controlled buys would be solicited from them before calling a halt to the undercover investigation and initiating charges. The record in the instant matter fully supports finding of fact 4.

Next, the State challenges the support in the record for finding of fact 6, that the second charged buy had no apparent purpose other than to increase the Defendant's presumptive sentencing range.[4] The State repeats its argument made below, that the State must always anticipate an entrapment defense when delivery is to an undercover officer, and adds another, that police credibility is always in issue and two buys on two different dates by two different officers enhances that credibility. While these propositions may be generally true, the record reflects that Officer Crenshaw was wired for sound during the transaction on February 4, as was Officer Christianson during the transaction on February 17, so that Hortman could have had no realistic hope of raising an entrapment defense or of challenging police credibility. A reasonable factfinder could infer, based on this record, that Officer Christianson's decision to solicit yet a third buy from Hortman while waiting for another suspect to deliver heroin had no other apparent purpose than to increase Hortman's offender score.[5]

Although the record fully supports the trial court's findings of fact, this court does not deem Officer Christianson's actual, subjective purpose in soliciting the third delivery to

---

[4]This finding, which is identical to a finding in *Sanchez*, is probably the source of the State's contention that *Sanchez* stands for the proposition that trial courts may utilize RCW 9.94A.390(1)(g) to dictate police investigative and prosecutorial charging decisions.

[5]The record would also support an equally reasonable inference that Hortman was not arrested and charged after the first (uncharged) buy or even after the next buy, in that the police were investigating more than one occupant of the apartment building; arresting Hortman after the first or second buy would likely have blown the police cover. The State has never raised this theory. Moreover, this court does not make findings of fact, or substitute its judgment for that of the factfinder, as between competing factual inferences.

be dispositive. We agree with the *Sanchez* court that the correct focus of the judicial inquiry, at the trial court level and on review, is the egregious effects of the defendant's multiple offenses — the difference, if any, between the effects of the first controlled buy alone and the cumulative effects of the multiple buys. Where that difference is nonexistent, trivial or trifling, we believe that RCW 9.94A.390(1)(g) permits a trial court to impose an exceptional sentence downward even if there are objectively reasonable law enforcement purposes (other than to increase the defendant's offender score) for arranging multiple controlled buys.

Finally, the State challenges each of the trial court's findings, as if each finding stood alone, and argues that such finding does not justify a departure from the standard range. These arguments beg the question. The trial court did not rule that each finding was an independent justification for imposing an exceptional sentence. Rather, the court's conclusion of law that the multiple offense policy would result in a presumptive sentence that was clearly excessive in view of the purposes of the SRA was based on the findings as a whole.

We also reject the State's contention that by concluding as it did that the multiple offense policy would result in a sentence that is clearly excessive, the trial court substituted its judgment for that of the Legislature. Instead, the trial court exercised the very authority granted by the Legislature in RCW 9.94A.390(1)(g), under facts essentially indistinguishable from those in *Sanchez*.

Whether a given presumptive sentence is clearly excessive in light of the purposes of the SRA is not a subjective determination dependent upon the individual sentencing philosophy of a given judge. Rather, it is an objective inquiry based on the Legislature's own stated purposes for the act. *See* RCW 9.94A.010 (setting forth the purposes of the SRA). *Sanchez* holds that a presumptive sentence calculated in accord with the multiple offense policy is clearly excessive if the difference between the effects of the first criminal act and the cumulative effects of the subsequent criminal acts is

nonexistent, trivial or trifling. We fully agree. The purposes of the SRA include ensuring punishments that are proportionate to the seriousness of the offense and the offender's criminal history, promoting respect for the law by providing punishment which is just, encouraging commensurate punishments for offenders who commit similar offenses, protecting the public, offering the offender an opportunity for self-improvement and making frugal use of the State's resources. RCW 9.94A.010.

None of these purposes is served by the multiple offense policy when the difference between the effects of the first act and the cumulative effects of the subsequent acts is de minimis. Even where the police may conduct multiple controlled buys in order to preserve their cover so as to apprehend additional suspects, for example, or with an eye to a potential entrapment defense, or in an effort to enhance witness credibility, the serving of these law enforcement purposes does not increase the egregious effects on society of the Defendant's subsequent deliveries to the undercover officers involved in the particular investigation.

The State does not contend that Hortman's 54-month exceptional sentence for selling $40 worth of rock cocaine is clearly too lenient in light of the purposes of the SRA.

Affirmed.

PEKELIS, C.J., and SCHOLFIELD, J., concur.

Review denied at 126 Wn.2d 1025 (1995).