# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46297-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RANDY RICHTER, | |
| Appellant. | |

MAXA, J. — Randy Richter challenges his convictions and sentence for three counts of delivery of a controlled substance, all within 1,000 feet of a school bus stop, and one count of possession with intent to deliver a controlled substance.

We hold that (1) the trial court did not err in denying Richter's motion for a mistrial after a police officer witness referred to Richter's statement to the officer, which the trial court had not admitted after a CrR 3.5 hearing; (2) the trial court's reasonable doubt jury instruction, which includes the phrase "a reasonable doubt is one for which a reason exists," was not constitutionally deficient; (3) the trial court did not abuse its discretion by imposing Richter's exceptional sentence above the standard range even though his convictions were based on three nearly identical controlled buys; and (4) Richter's claims of error in his statement of additional

grounds (SAG) have no merit.[1] However, we hold that the trial court erred in sentencing Richter by imposing Richter's three school zone enhancements consecutively with each other and by imposing discretionary legal financial obligations (LFOs) without assessing Richter's current and future ability to pay.

Accordingly, we affirm Richter's convictions, but remand for resentencing.

FACTS

A confidential informant (CI) told the Longview Police Department that Richter would sell her methamphetamine. Detective Rocky Epperson, who was with the Cowlitz/Wahkiakum Narcotics Task Force, set up a series of controlled buys. On June 21, July 5, and July 11, 2013, Richter sold the CI 0.9 grams, 0.6 grams, and 0.3 grams of methamphetamine, respectively. Each controlled buy basically followed the same procedure.

On August 28, 2013, Epperson stopped Richter's vehicle and arrested him. Richter's vehicle was taken back to the Longview Police Department's secured parking lot. Epperson obtained a search warrant for the vehicle, which he executed on August 29. He found a backpack in Richter's vehicle, which included a digital scale with crystal residue, baggies, a lockbox, and a bag of methamphetamine.

The State charged Richter with three counts of delivery of a controlled substance within 1,000 feet of a school bus stop and one count of possession of a controlled substance with intent to deliver.

---

[1] Richter also argues that defense counsel was ineffective for failing to object to the trial court's imposition of legal financial obligations. Because we hold that the trial court erred in imposing legal financial obligations, we do not address this argument.

Before trial began, the parties briefly discussed the need for a hearing under CrR 3.5. The prosecutor indicated he did not plan to introduce any of Richter's statements made to the police. Therefore, the trial court did not conduct a CrR 3.5 hearing.

At trial, defense counsel questioned Epperson about his search of Richter's vehicle. Epperson said that he found a backpack sitting on the passenger seat near some automotive items "[t]hat Mr. Richter later told me were his." Report of Proceedings (RP) (Apr. 24, 2014) at 158. Defense counsel objected and asked that Epperson's testimony about Richter's statement be stricken. The trial court sustained the objection and instructed the jury to disregard Epperson's testimony. Later that day, Richter moved for a mistrial because Epperson testified about an admission by Richter that had not been admitted by a CrR 3.5 hearing. The trial court denied the motion for a mistrial.

The trial continued and the case was submitted to the jury. The trial court gave the standard reasonable doubt jury instruction, which includes the statement that "[a] reasonable doubt is one for which a reason exists." Clerk's Papers (CP) at 21. This instruction was identical to WPIC 4.01. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC).

The jury found Richter guilty of all four charges. In addition, for each of Richter's three counts of delivery of a controlled substance, the jury returned a special verdict finding that Richter had delivered a controlled substance within 1,000 feet of a school bus route stop.

The trial court calculated Richter's offender score at 28, which provided Richter with a standard sentencing range of 60 to 120 months for each of the convictions. Richter asked the trial court to impose a midrange sentence based on the fact that the police were in control of the

number of his controlled buys. The trial court responded that although officers determined the number of controlled buys, nobody was forcing Richter to sell drugs and he could have made the decision to stop. The trial court found that an exceptional sentence was appropriate because Richter's high offender score resulted in some current offenses going unpunished under RCW 9.94A.535(2)(c).

The trial court sentenced Richter to 160 months for each of Richter's four convictions, to be served concurrently. The trial court also sentenced Richter to 24 months for each of the three school zone enhancements, and imposed them consecutively with the other sentences and with each other.

The trial court imposed $5,045 in LFOs without addressing Richter's future or current ability to pay. Richter did not object to the trial court's imposition of LFOs.

Richter appeals his convictions and sentence.

ANALYSIS

A.  DENIAL OF RICHTER'S MOTION FOR A MISTRIAL

Richter challenges the trial court's denial of his motion for a mistrial based on Epperson's testimony about Richter's statement to him regarding ownership of automotive items found next to a backpack containing methamphetamine. Richter argues that a mistrial was necessary because Richter's statement was admitted without the trial court holding a constitutionally required CrR 3.5 hearing. We disagree.

1.  Violation of CrR 3.5

CrR 3.5(a) provides that "[w]hen a statement of the accused is to be offered in evidence," the trial court shall hold a hearing to determine whether the statement is admissible. The purpose

of a CrR 3.5 hearing is to provide a mechanism by which a defendant can have the voluntariness of an incriminating statement determined in a preliminary hearing, outside the presence of the jury. *State v. Williams*, 137 Wn.2d 746, 750, 975 P.2d 963 (1999). CrR 3.5 is a mandatory rule – the trial court must hold a CrR 3.5 hearing before admitting a defendant's statement. *State v. Kidd*, 36 Wn. App. 503, 509, 674 P.2d 674 (1983).[2]

The trial court would have violated CrR 3.5 if it had allowed Epperson's testimony about Richter's statement into evidence. However, the trial court did not allow the testimony into evidence – it sustained Richter's objection to the testimony and instructed the jury to disregard the testimony. CrR 3.5 expressly applies only when the defendant's statement is "to be offered in evidence." Therefore, we hold that the trial court did not violate CrR 3.5.

2.    Mistrial Analysis

Determining that the trial court did not violate CrR 3.5 does not end our analysis. Richter appears to argue that the trial court should have ordered a mistrial because the jury heard Epperson's testimony about Richter's statement before it was stricken, which caused incurable prejudice. We disagree.

We review a trial court's denial of a mistrial for abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). In evaluating a mistrial motion, we consider (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court instructed the jury to disregard the evidence. *Id.* These factors are

---

[2] The State argues that CrR 3.5 is inapplicable here because Richter's statement was not a "confession." However, CrR 3.5 expressly applies to any "statement" of the defendant, and is not limited to "confessions." And Richter's statement arguably was incriminating.

considered with deference to the trial court because the trial court is in the best position to discern prejudice. *State v. Garcia*, 177 Wn. App. 769, 776-77, 313 P.3d 422 (2013), *review denied*, 179 Wn.2d 1026 (2014). A trial court should only grant a mistrial if there is such prejudice that nothing short of a mistrial will ensure the defendant a fair trial. *Emery*, 174 Wn.2d at 765. And an abuse of discretion will be found for denial of a mistrial only when no reasonable judge would have reached the same conclusion. *Id.*

At trial, defense counsel elicited the following testimony:

Q: What about that backpack, did you find any kind of mail or any kind of things that would indicate it was Randy's stuff?
A: No, it was sitting on the passenger seat right near some automotive-type things.
Q. Okay.
A: *That Mr. Richter later told me were his.*

RP (Apr. 24, 2014) at 158 (emphasis added). As noted above, the trial court immediately sustained an objection to the testimony and instructed the jury to disregard it.

Analysis of the mistrial factors shows that the trial court did not abuse its discretion in denying the motion for mistrial based on this testimony. First, the irregularity was not particularly serious. Epperson's testimony was inadmissible because no CrR 3.5 hearing had been held, and therefore it was improper for him to reference Richter's statement. However, Richter only admitted to owning things next to the backpack, not the backpack itself. Although the jury could have inferred from Richter's statement that he also owned the backpack, the irregularity was not as serious as if Richter actually had admitted to owning the backpack.

Second, Epperson's testimony about Richter's statement was somewhat cumulative. No other evidence was admitted at trial regarding Richter's statements that the automotive items or the backpack itself were his. However, Richter was arrested with the backpack next to him in

6

the passenger seat of the vehicle that he had driven during all the controlled buys. And the backpack contained packing materials and methamphetamine similar to what the CI and law enforcement officer received from Richter when making controlled buys. Therefore, there was other circumstantial evidence that Richter was in possession of the backpack.

Third, the trial court instructed the jury that it was sustaining Richter's objection and that the jury should disregard Epperson's testimony. Richter's prompt objection to Epperson's statement and the trial court's verbal instruction to the jury cured any irregularity. And we presume that the jury followed the trial court's instruction and considered only the evidence that was properly before it. *State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011).

We hold that the trial court did not abuse its discretion in concluding that Epperson's testimony about Richter's statement did not warrant a mistrial. Therefore, we hold that the trial court did not err when it denied Richter's mistrial motion.

B.      PROPRIETY OF WPIC 4.01

Richter argues that the jury instruction defining reasonable doubt as "one for which a reason exists" was constitutionally deficient because (1) it required the jury to articulate a reason for having a reasonable doubt and (2) impermissibly shifts the burden of proof to the defendant. Suppl. Br. of Appellant at 2. We disagree.

The trial court's reasonable doubt jury instruction was identical to WPIC 4.01. In *State v. Bennett*, the Supreme Court directed trial courts to use only WPIC 4.01 to instruct juries on the burden to prove every element of the charged crime beyond a reasonable doubt. 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). In *State v. Kalebaugh*, the Supreme Court recently reaffirmed that WPIC 4.01 was the "proper" instruction and "the correct legal instruction on reasonable doubt."

183 Wn.2d 578, 585-86, 355 P.3d 253 (2015). The court distinguished between the proper language of WPIC 4.01 ("a doubt for which a reason *exists*") and the trial court's improper additional instruction in that case ("a doubt for which a reason *can be given*"). *Id.* at 584 (emphasis added). Similarly, the Supreme Court in *Emery* stated that the prosecutor in closing argument "properly" described reasonable doubt as a doubt for which a reason exists. 174 Wn.2d at 760.

*Bennett* and *Kalebaugh* control here. We are constrained by these cases to hold that the trial court did not err in giving the reasonable doubt instruction based on WPIC 4.01.[3]

C.      EXCEPTIONAL SENTENCES

Richter argues that the trial court's 160 month exceptional sentence was clearly excessive because his three convictions for possession of a controlled substance all arose from controlled buys that involved the same buyer and small amounts of drugs over a short period of time. We disagree.

1.      Standard of Review

To reverse a sentence that is outside the standard sentence range, a reviewing court must find either that (1) the record does not support the trial court's reasons for the sentence, (2) those reasons do not support an exceptional sentence, or (3) the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A.585(4); *State v. France*, 176 Wn. App. 463, 469,

---

[3] Richter's argues that the trial court's reasonable doubt instruction resembles the improper "fill in the blank" arguments that constitute prosecutorial misconduct under *Emery*, 174 Wn.2d at 760, and other cases. The Supreme Court did not address this argument in *Kalebaugh* or *Emery*, but we are bound by the approval of the WPIC 4.01 reasonable doubt language in those cases.

308 P.3d 812 (2013), *review denied*, 179 Wn.2d 1015 (2014). Richter argues only that the trial court's exceptional sentence was clearly excessive.

We review a claim that an exceptional sentence is clearly excessive under an abuse of discretion standard. *France*, 176 Wn. App. at 469.

2. Exceptional Sentence for Unpunished Offenses

A defendant's standard sentencing range is based on his or her offender score. *See* RCW 9.94A.510. Under RCW 9.94A.525, the trial court calculates a defendant's offender score based on prior convictions. RCW 9.94A.589(1)(a) provides that when a defendant is sentenced for multiple current offenses, the offender score for each current offense is determined by treating the other current convictions as if they were prior convictions.

However, a defendant's standard range sentence reaches its maximum limit at an offender score of 9. RCW 9.94A.510; *State v. Alvarado*, 164 Wn.2d 556, 561, 192 P.3d 345 (2008). This means that when a defendant's offender score already is 9 without consideration of the other current offenses, those current offenses do not affect the defendant's sentencing range for the first offense. *Id.* at 563. In other words, in this situation the defendant would not be punished for the other current offenses if sentenced within the standard range for the first offense. *Id.*

RCW 9.94A.535(2)(c) allows the trial court to remedy this situation. That statute provides that a trial court may impose an aggravated exceptional sentence without a finding of fact by the jury when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). Once the trial court determines that some of the defendant's offenses

9

will go unpunished, it has discretion to impose an exceptional sentence on all current offenses. *France*, 176 Wn. App. at 468-69. This is known as the "free crimes aggravator." *Id.* at 468.

Here, the trial court calculated Richter's offender score as 28. This meant that if Richter was sentenced within the standard range for one of his convictions, he would not receive any punishment for the other three convictions. *See Alvarado*, 164 Wn.2d at 563. As a result, the trial court imposed an exceptional sentence on all the current offenses based on the free crimes aggravator.

### 3. Multiple Controlled Drug Buys

Richter argues that the trial court's exceptional sentences were clearly excessive because there was no meaningful difference between the first controlled buy and the other two. He relies on two cases, *State v. Sanchez*, 69 Wn. App. 255, 848 P.2d 208 (1993), and *State v. Hortman*, 76 Wn. App. 454, 886 P.2d 234 (1994), that involved exceptional sentences *below* the standard range.

In *Sanchez*, police initiated three controlled buys involving the same buyer at the same residence within nine days. 69 Wn. App. at 256-57. The defendant's sentence range (67 to 89 months) was based on the three current offenses; the defendant had no prior criminal history. *Id.* at 257. At sentencing, the trial court imposed an exceptional sentence below the standard range for each of the three counts. *Id.* at 257.

This court held that a below-range sentence is justified when the difference between the effects of the first buy and the cumulative effects of all three buys is "nonexistent, trivial or trifling." *Id.* at 261. The court held that the trial court did not abuse its discretion in imposing an exceptional sentence below the standard range because the second and third controlled buys

added little or nothing to the first one. *Id.* at 261. The court stated that the last two controlled buys had no apparent purpose other than to increase the presumptive sentence. *Id*. at 261. But the court was careful to note that its holding did not apply to police-initiated controlled buys that involved different sellers or purchasers, large quantities of drugs, or with a law enforcement purpose other than to generate an increase in the offender's standard range. *Id.* at 262-63.

In *Hortman*, Division One of this court adopted the reasoning articulated in *Sanchez*. *Hortman*, 76 Wn. App. at 463-64. That case also involved two controlled buys in an identical location with the same buyer over approximately a month. *Id.* at 456. The court affirmed the trial court's imposition of an exceptional sentence below the standard range based on the trial court's finding that the difference between the first buy and the second buy was so minimal as to be trivial. *Id.* at 458, 462-64.[4]

*Sanchez* and *Hortman* are distinguishable for three reasons. First, they both involved exceptional sentences *below* the standard range. *Hortman*, 76 Wn. App. at 458; *Sanchez*, 69 Wn. App. at 257. Here, the trial court imposed an exceptional sentence above the standard range. Second, both cases involved whether the multiple offense policy of former RCW 9.94A.400, *recodified as* RCW 9.94A.589 (2001) would result in a standard range sentence that was clearly excessive when the defendants had low offender scores without the current offenses.[5] *Hortman*, 76 Wn. App. at 457-58; *Sanchez*, 69 Wn. App. at 260. Here, the multiple offense policy was

---

[4] The analysis in *Sanchez* primarily has been applied only in the context of a trial court exercising its discretion to adjust a defendant's sentence downward. *See, e.g.*, *State v. Bridges*, 104 Wn. App. 98, 100-04, 15 P.3d 1047 (2001); *State v. Fitch*, 78 Wn. App. 546, 549-54, 897 P.2d 424 (1995).

[5] The defendant's offender score without the current offenses was 0 in *Sanchez* and 7 in *Hortman*. *Sanchez*, 69 Wn. App. at 257; *Hortman*, 76 Wn. App. at 457.

irrelevant because Richter's high offender score meant that the current offenses could not increase the standard sentencing range. Third, neither case involved a "free crimes" situation. In both *Sanchez* and *Hortman*, the defendants were punished for all current crimes, but below the standard range. *Sanchez*, 69 Wn. App. at 257; *Hortman*, 76 Wn. App. at 457. Here, imposition of a standard range sentence would not have punished Richter at all for his current offenses.

Given these differences, *Sanchez* and *Hortman* are not controlling. On the other hand, the principle that multiple controlled buys should not dictate the sentence when the subsequent controlled buys add little or nothing to the first one may have some relevance in considering the free crimes aggravator. A trial court could decide not to impose an exceptional sentence based on the holding in *Sanchez*. However, Richter cites no authority for the proposition that a trial court *automatically* abuses its discretion by imposing an exceptional sentence based on the free crimes aggravator when the current offenses are based on similar controlled buys.[6]

Further, Richter ignores the fourth conviction, for possession with intent to deliver. That conviction was not part of a series of controlled buys, and the *Sanchez* rule has no application. Given Richter's high offender score, this fourth conviction would not have been punished if the trial court had imposed a standard range sentence. And as stated above, if some of the defendant's offenses will go unpunished, the trial court has discretion to impose an exceptional sentence on all current offenses. *France*, 176 Wn. App. at 468-69.

---

[6] In the one case addressing *Sanchez* that involved an above-range exceptional sentence based on an ongoing investigation, this court distinguished *Sanchez*. *State v. McCollum*, 88 Wn. App. 977, 985-86, 947 P.2d 1235 (1997). The court stated that the difference between the offenses was not trivial, and "[i]n fact, the offenses together draw a picture of an active drug dealer." *Id.* at 986-87.

Here, the trial court had statutory authority to impose an exceptional sentence above the standard range because Richter's offender score of 28, even without the current offenses, meant that a standard range sentence would not punish him for the current offenses. RCW 9.94A.535(2)(c). Even if there was no difference between the three deliveries of a controlled substance offenses, the possession with intent to deliver offense was different and would be unpunished by a standard range sentence. And Richter's offender score even without the current offenses was 28. Richter does not explain why his exceptional sentence was clearly excessive under these circumstances.

As stated above, the standard of review is abuse of discretion. *France*, 176 Wn. App. at 469. We hold that the trial court did not abuse its discretion by imposing a 160 month exceptional sentence above the standard range for Richter's offenses.

D.  CONSECUTIVE SCHOOL ZONE ENHANCEMENTS

Richter argues the trial court exceeded its statutory sentencing authority by imposing three school zone sentencing enhancements under RCW 9.94A.533(6) consecutively with each other, rather than concurrently. Under the Supreme Court's recent decision in *State v. Conover*, 183 Wn.2d 706, 355 P.3d 1093 (2015), we hold that the trial court erred.

RCW 9.94A.533(6) provides as follows:

> An additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435 or 9.94A.827. All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.

The first sentence of RCW 9.94A.533(6) is not at issue. There is no question that Richter committed ranked offenses under chapter 69.50 RCW in violation of RCW 69.50.435, which

requires enhanced penalties for drug offenses committed within 1,000 feet of a school bus stop or school grounds. RCW 69.50.401(1), .435(1)(c), (d). At issue here is the meaning of the second sentence in RCW 9.94A.533(6): "All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter."

The Supreme Court recently resolved this issue in *Conover* by comparing the language of RCW 9.94A.533(6) with the contrasting language in the statutory provisions addressing other sentence enhancements: RCW 9.94A.533(3)(e) (firearm enhancements shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements) and RCW 9.94A.533(4)(e) (deadly weapon enhancements shall run consecutively to all other sentencing provisions, including other deadly weapon or firearm enhancements)). 183 Wn.2d at 712-13. The court concluded that the legislature's choice of different language indicates a different legislative intent and does not require multiple school zone enhancements to be imposed consecutively to each other. *Id.* at 712-13. Therefore, the court held that "RCW 9.94A.533(6) requires the trial court to run Conover's bus stop enhancements consecutively to the base sentences for each [convicted offense], but not consecutively to each other." *Id.* at 719.

*Conover* controls. Therefore, we remand for resentencing.

E.      IMPOSITION OF LFOS

Richter argues that the trial court erred in imposing LFOs without determining whether he had a current or future ability to pay them. We agree.[7]

---

[7] Richter did not object to the imposition of LFOs at sentencing. Under RAP 2.5(a), we ordinarily do not consider LFO challenges raised for the first time on appeal. *See State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015). However, as discussed above, we are remanding for resentencing. Because this case will be remanded, we will consider the LFO issue.

14

RCW 10.01.160(3) provides that the trial court (1) "shall not order a defendant to pay costs unless the defendant is or will be able to pay them," and (2) shall take account of the defendant's financial resources and the nature of the burden that payment of costs will impose in determining the amount and method of payment of costs. "The trial court must decide to impose LFOs and must consider the defendant's current or future ability to pay those LFOs based on the particular facts of the defendant's case." *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015).

The Supreme Court in *Blazina* made it clear that the trial court must expressly assess, on the record, a defendant's ability to pay LFOs.

> Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

*Id.* at 838.

Here, the record shows that the trial court failed to assess Richter's current or future ability to pay and simply included boilerplate language to that effect. Under *Blazina*, inclusion of boilerplate language in the judgment and sentence that the trial court made such an assessment is not sufficient. 182 Wn.2d at 838. Accordingly, we hold that the trial court erred in imposing discretionary LFOs. We instruct the trial court on remand to consider Richter's current or future likely ability to pay discretionary LFOS before imposing them.

G.    SAG ASSERTIONS

Richter asserts a number of arguments in his SAG.  A SAG must adequately inform this court of the nature and occurrence of alleged errors.  *State v. Gauthier*, 189 Wn. App. 30, 43-44, 354 P.3d 900 (2015).  Issues involving facts outside of the record are properly raised in a personal restraint petition, rather than a SAG.  *Id.* at 43.  And we are "not obligated to search the record in support of claims made in a defendant's [SAG]."  RAP 10.10(c).

1.    Matters Outside the Record

Richter argues that the State failed to provide him with discovery evidence, which included the CI's packet, video surveillance, and audio records.  Richter and his various defense counsel requested the CI packet on the record several times, including a final request on the record on January 21, 2013.  The record is silent on whether either Richter or his defense attorney received the CI packet, video surveillance, or audio records before trial.  Without resorting to conjecture, we cannot address this issue further on this record.  Accordingly, we do not address this argument further.  *Gauthier*, 189 Wn. App. at 43-44.

Richter makes several other arguments that rely on evidence outside the record on appeal.  Richter argues that that the prosecutor made a deal with the CI in exchange for her false testimony and that the prosecutor suppressed evidence of the CI's criminal charges to preserve her credibility.  He also argues that his defense counsel provided ineffective assistance because defense counsel (1) failed to interview David Child or Sean Griner,[8] potential witnesses helpful to Richter's case, (2) failed to speak with Richter's previous attorneys, (3) failed to investigate

---

[8] In fact, Richter's defense counsel informed the court that he was planning on calling both Childs and Griner as witnesses, so the record tends to reflect the opposite of what Richter is contending.  There is no evidence in the record that either person was called as a witness.

the police reports addressing the police-initiated controlled buys, (4) withheld discovery from Richter, (5) failed to request a continuance to allow Richter to examine the State's withheld discovery, and (6) failed to file a motion that Richter requested to recuse the trial court judge based on a conflict of interest.

There is no evidence in the record relating to these claims. We cannot address these claims without resorting to conjecture. Accordingly, these claims rely on matters outside the record, which we cannot review. *Gauthier*, 189 Wn. App. at 43-44.

2.    Ineffective Assistance of Counsel

Richter's SAG makes several additional claims that his defense counsel provided ineffective assistance. We disagree.

To prevail on an ineffective assistance of counsel claim the defendant must show that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). This court presumes counsel's performance was not deficient. *Id.* at 33. The defendant may rebut this presumption by showing that the performance was not a matter of legitimate trial strategy or tactics, and fell below an objective standard of reasonableness. *Id.* To show prejudice, the defendant must show a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015).

a.    Severance of Charges

Richter seems to assert that his defense counsel was ineffective because he failed to make a motion to sever Richter's three charges of delivery of a controlled substance. Richter claims

that had the charges been severed, there would have been insufficient evidence to convict him of each offense. We hold that even assuming that counsel performed deficiently, Richter's claim fails because he cannot show that the trial court probably would have granted the motion. Consequently, he cannot make the necessary showing of prejudice.

Washington law "disfavors separate trials," *State v. McDaniel*, 155 Wn. App. 829, 860, 230 P.3d 245 (2010), based on concerns about judicial economy. *See State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). However, severance is appropriate where "there is a risk that the jury will use the evidence of one crime to infer the defendant's guilt for another crime or to infer a general criminal disposition." *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Accordingly, CrR 4.4(b) provides that the trial court "shall grant a severance of offenses whenever . . . the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." Whether to sever charges is within the trial court's discretion. *See State v. Huynh*, 175 Wn. App. 896, 908, 307 P.3d 788 (2013).

To determine whether severance is warranted, we consider four factors: " '(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.' " *Sutherby*, 165 Wn.2d at 884-85 (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)).

Here, the record provides no evidence that the trial court probably would have granted a motion to sever Richter's three counts based on the severance factors had defense counsel filed one.

First, the State presented strong evidence of each count. Two police officers and the CI testified that Richter transferred methamphetamine to the CI during each controlled buy. Moreover, there was video evidence of each controlled buy. In this way, each case was strong, but neither case was stronger than the other such that Richter would be prejudiced by trying the cases together.

Second, as Richter admits in his SAG, his defense at trial to all three charges was attacking the credibility of the police officer witnesses and others who testified. It is unlikely that trying the charges together would have confused the jurors regarding this defense.

Third, the trial court informed the jury that it was required to consider each count separately. There is no reason to believe that the jury disregarded this instruction.

Fourth, Richter does not contend that evidence of his other charges would not be admissible even if the counts were not joined for trial. But even assuming that he did, "[t]he fact that separate counts would not be cross admissible in separate proceedings does not necessarily represent a sufficient ground to sever as a matter of law." *State v. Kalakosky*, 121 Wn.2d 525, 538, 852 P.2d 1064 (1993).

Here there is no evidence that the trial court would have granted a motion to sever. As a result, Richter cannot show that defense counsel's failure to file a motion to sever prejudiced him. We hold that Richter's ineffective assistance claim on this basis fails.

b.    Impeaching the CI

Richter asserts that his attorney was deficient for failing to impeach the CI with evidence that she had called him rather than texted him to arrange a police-initiated controlled buy. However, this claim is not in accordance with the facts in the record. While questioning the CI,

Richter's defense counsel asked whether she actually had voice contact with Richter. This demonstrates that Richter's defense counsel actually did attempt to impeach the CI's credibility by attempting to get her to admit that she called instead of texted Richter.

Because Richter's defense counsel did attempt to impeach the CI, we hold that this argument has no merit.

### c. Informant Instruction

Richter asserts that his attorney was deficient for failing to request an informant instruction. Richter does not explain what he means by "informant instruction," but the record shows that Richter's attorney did not make a request for an instruction highlighting the CI's confidential informant status.

To establish ineffective assistance of counsel for failing to request an instruction, Richter must show that he was entitled to the instruction. *State v. Olson*, 182 Wn. App. 362, 373, 329 P.3d 121 (2014). Richter has failed to make this showing for two reasons. First, independent research has discovered no cases holding that Washington law requires the trial court to give an instruction highlighting a confidential informant's status. Second, Richter does not suggest the language of his proposed instruction. A trial court is not required to give a proposed instruction if the instruction does not properly state the law or the evidence does not support it. *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995). Without specific proposed language, we cannot determine whether Richter was entitled to an "informant instruction."

We hold that Richter's ineffective assistance of counsel argument on this basis fails.

3.    The CI's Credibility

Richter argues that the evidence did not support that the CI was a credible witness. However, we do not address issues of witness credibility on appeal. Instead, we defer to the fact finder's measure of witness credibility. *See State v. Castillo-Murcia*, 188 Wn. App. 539, 354 P.3d 932 (2015). Accordingly, we do not address this issue further.

4.    Impound of Richter's Vehicle

Richter argues that law enforcement's entry of his vehicle after his arrest to drive the vehicle to the police impound lot amounted to an unconstitutional seizure of his vehicle. We disagree.

Here, the record shows that Richter was arrested on August 28, 2013. Following Richter's arrest, Epperson took Richter's vehicle and drove it to the Longview Police Department's secured parking lot. Epperson obtained a warrant to search the vehicle and executed the search on August 29. He found drug evidence.

We hold that Epperson lawfully impounded Richter's vehicle. A vehicle may be lawfully impounded as evidence of a crime, if the officer has probable cause to believe that the vehicle was stolen or used in the commission of a felony. *State v. Tyler*, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). Here, it was reasonable for Epperson to seize Richter's vehicle to drive to the Longview Police Department's secured parking lot because Epperson had probable cause to believe that the vehicle had been used in the commission of a felony. The vehicle Richter was driving at the time of his arrest was the same vehicle he had been driving for each drug transaction.

Accordingly, we hold that Epperson lawfully impounded Richter's vehicle.

5. Judge's Recusal

Richter argues that the trial court judge should have recused himself from Richter's case based on the judge's prior family court experience with Richter and his family. We decline to address this issue because Richter did not raise it in the trial court.

Richter appears to assert an appearance of fairness claim. Washington Code of Judicial Conduct (CJC) Canon 3.1 and the appearance of fairness doctrine require a judge to disqualify himself or herself from a proceeding if the judge is biased against a party or the judge's impartiality may reasonably be questioned. *State v. Gentry*, 183 Wn.2d 749, 761-62, 356 P.3d 714, *review denied*, (Oct. 2015). Canon 3, Rule 3.1(C) states that judges shall not "participate in activities that would undermine the judge's independence, integrity, or impartiality." Canon 2, Rule 2.11(A) provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."

However, we generally will not consider an issue that a party raises for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). An appearance of fairness claim is not constitutional in nature under RAP 2.5(a)(3), and therefore, may not be raised for the first time on appeal. *State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008); *see also City of Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 863, 586 P.2d 470 (1978) ("Our appearance of fairness doctrine, though related to concerns dealing with due process considerations, is not constitutionally based.").

No. 46297-4-II

Because Richter did not assert in the trial court that the judge should recuse himself because of an appearance of fairness, we decline to consider this claim.

We affirm Richter's convictions, but remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
JOHANSON, C.J.

_____
MELNICK, J.