IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37422-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| CECILY ZORADA MCFARLAND, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — In 2014, Cecily McFarland received a 237-month standard

range sentence for first degree burglary and 13 related firearm offenses. Ms. McFarland's

sentence was largely driven by a multiple offense aggravator, requiring the firearm

convictions to run consecutively. In two prior appeals, Ms. McFarland's sentence

was remanded for consideration of an exceptional sentence downward based on the

possible excessive impact of the multiple offense aggravator. During both remand

proceedings, the sentencing judge declined to change Ms. McFarland's sentence, citing a lack of discretion. In the most recent proceeding, the court did not even resentence Ms. McFarland. It instead issued a written order declining to modify Ms. McFarland's sentence.

We again remand. Ms. McFarland is entitled to resentencing, not just a written order. At resentencing, the court shall assess whether Ms. McFarland should receive an exceptional sentence downward based on the excessive impact of the multiple offense aggravator. The prior appellate decisions resulting in remand have held that an exceptional sentence is legally available in Ms. McFarland's case. The only barrier to imposition is the factual question of whether operation of the multiple offense aggravator results in an excessive sentence. Answering this question requires assessing the nature of Ms. McFarland's convictions and their cumulative impact. Contrary to the position of the sentencing judge and the State, the analysis is not governed by sentences imposed on other individuals or the appropriateness of the prosecutor's charging decisions. The question is essentially whether running all Ms. McFarland's firearm convictions consecutively overstates the seriousness of her offense conduct.

During Ms. McFarland's previous remand hearings, the sentencing judge expressed frustration with the analysis set forth in the prior decisions of this court and

the Washington Supreme Court. This dissatisfaction appears to have interfered with the judge's willingness to abide by the remand orders. Given this circumstance, and in the interest of finality, we order Ms. McFarland's resentencing hearing be conducted before a different sentencing judge.

FACTS

In 2014, Cecily McFarland and her boyfriend burgled a Moses Lake home. Among other items, the homeowner reported a loss of 18 firearms. The day after the burglary, police recovered 10 of the missing firearms from the home of Ms. McFarland's boyfriend. The remaining firearms were never located. Ms. McFarland and her boyfriend admitted to trading multiple stolen firearms for methamphetamine. The State charged Ms. McFarland with one count of first degree burglary as an accomplice, 10 counts of theft of a firearm as an accomplice, one count of first degree trafficking in stolen property as an accomplice, and three counts of second degree unlawful possession of a firearm. The firearm charges stemmed from the 10 guns that were recovered the day after the burglary.

Ms. McFarland's boyfriend resolved his case through a plea agreement. He received a prison-based drug offender sentencing alternative term of 78.75 months.

3

Ms. McFarland turned down the same offer and exercised her right to a jury trial. She

was convicted on all counts except trafficking in stolen property.

At sentencing, Ms. McFarland faced a sentencing range of 237 to 306 months'

imprisonment. The range was largely driven by a multiple offense aggravator, requiring

all firearm convictions to run consecutively. RCW 9.94A.589(1)(c); RCW 9.41.040(6).

At sentencing, Ms. McFarland asked for a low-end sentence. Her lawyer pointed out

that if she had stolen toasters, not firearms, her sentencing range would have been 9

to 12 months. The sentencing court seemed to agree Ms. McFarland's sentence was

disproportionate to her crime, noting 237 months in prison was more in line with a second

degree murder sentence. Nevertheless, the court imposed a low-end sentence, citing a

lack of discretion.

In an initial appeal, we affirmed Ms. McFarland's convictions and sentence.[1]

Our Supreme Court granted review and reversed Ms. McFarland's sentence. *State v.

McFarland*, 189 Wn.2d 47, 399 P.3d 1106 (2017) (*McFarland* II). The court held:

> [I]n a case in which standard range consecutive sentencing for multiple
> firearm-related convictions "results in a presumptive sentence that is clearly
> excessive in light of the purpose of the SRA [Sentencing Reform Act of
> 1981, chapter 9.94A RCW]," a sentencing court has discretion to impose an

---

[1] *State v. McFarland*, No. 32873-2-III (Wash. Ct. App. Mar. 8, 2016)
(unpublished) (*McFarland* I), https://www.courts.wa.gov/opinions/pdf/328732.unp.pdf,
*reversed*, 189 Wn.2d 47, 399 P.3d 1106 (2017) (*McFarland* II).

4

> exceptional, mitigated sentence by imposing concurrent firearm-related
> sentences.

*Id*. at 55 (quoting RCW 9.94A.535(1)(g)). The Supreme Court concluded the "sentencing court erroneously believed it could not impose concurrent sentences." *Id*. at 56. The court remanded for resentencing so the sentencing court would have the opportunity to exercise discretion on the issue of whether to impose an exceptional sentence downward under RCW 9.94A.535.

Resentencing took place in 2017. Ms. McFarland requested an exceptional mitigated sentence of 41 months, which represented a low-end sentence after running all counts of conviction concurrently. The sentencing court declined to impose a different sentence. The court agreed with defense counsel that Ms. McFarland's sentence was excessive, but opined this was more a result of the prosecutor's charging decisions. The court determined it lacked authority to disregard the charging decisions and impose a different sentence.

Ms. McFarland again appealed her judgment and sentence. In an unpublished decision, a majority of this court reversed and again remanded for resentencing. *State v. McFarland*, No. 35703-1-III (Wash. Ct. App. May 2, 2019) (unpublished) (*McFarland* III), https://www.courts.wa.gov/opinions/pdf/357031_ord.pdf. We explained the sentencing court failed to exercise its sentencing discretion, as set forth in *McFarland* II.

5

On remand, we directed the sentencing court to consider the seven policies constituting

the purpose of the SRA listed in RCW 9.94A.010.[2] *Id*. at 7.

This second remand to the sentencing court was mandated in 2019. On remand, the

court conducted a series of hearings with counsel and Ms. McFarland. Ms. McFarland's

attorney again requested the court run all counts of conviction concurrently, for a total

sentence of 41 months. The State argued the court should abide by its original sentence.

Although the Supreme Court in *McFarland* II held that the sentencing court possessed

discretion to impose an exceptional sentence downward, the State argued the court could

not act on this discretion unless Ms. McFarland showed her sentence was excessive in

comparison to other similarly situated individuals.

---

[2] The seven policies of RCW 9.94A.010 are:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
(2) Promote respect for the law by providing punishment which is just;
(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve himself or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.

6

During the proceedings on remand, the sentencing court continued to express dissatisfaction with the State's charging decisions. It also criticized the State's decision not to seek review of our decision in *McFarland* III. The court stated it did not understand our ruling in *McFarland* III.[3] At the close of a hearing on November 21, 2019, the court stated it would take Ms. McFarland's case under advisement. While Ms. McFarland was present for the various court hearings, she was never provided an opportunity for allocution.

In January 2020, the sentencing court issued a letter ruling, setting forth its analysis. The court provided a thoughtful discussion of the SRA and lamented the law provides prosecutors with unrestrained power to dictate overly harsh sentences through their charging decisions. The court indicated it remained sympathetic to Ms. McFarland's request for a lower sentence. Nevertheless, the court declared it would not modify the sentence unless it received a ruling from the Washington Supreme Court allowing the use of RCW 9.94A.535(1)(g)'s downward departure provision as a method for enforcing prosecutorial charging standards set by the SRA. *See* RCW 9.94A.401, et seq.

---

[3] "I don't understand why the Court of Appeals . . . ruled the way they did. . . . I don't understand why this case came back at all." Report of Proceedings (Aug. 21, 2019) at 31-32. Counsel for the State agreed, "I share your confusion. I don't understand it either." *Id.* at 32.

The sentencing court subsequently issued a written order stating the November 14, 2017, amended felony judgment and sentence remained in effect. Ms. McFarland was not resentenced. Ms. McFarland timely appeals from the sentencing court's decision.

ANALYSIS

The standards governing our review of Ms. McFarland's sentencing appeal are well established. A standard range sentence, such as the one imposed on Ms. McFarland, is generally not appealable. RCW 9.94A.589(1). However, Ms. McFarland, like all defendants, has the right to challenge the legality of a sentencing judge's procedural decisions. *State v. Herzog*, 112 Wn.2d 419, 423, 771 P.2d 739 (1989). As she has done in the past, Ms. McFarland argues the sentencing court violated her procedural rights by failing to recognize its discretion to impose an exceptional sentence downward. This is a reviewable claim. *State v. Grayson*, 154 Wn.2d 333, 341-42, 111 P.3d 1183 (2005).

*Ms. McFarland is entitled to resentencing*

We readily agree Ms. McFarland's resentencing proceeding was legally flawed. In *McFarland* III, we remanded Ms. McFarland's case for resentencing. Yet no resentencing took place. The court instead declined to modify its prior sentence. This did not comport with our mandate. Our prior decision required a resentencing hearing at which the court would exercise its discretion on the issue of whether to grant an

8

exceptional sentence downward based on operation of the multiple offense aggravator.

Because this did not happen, Ms. McFarland is entitled to resentencing.

Resentencing is also required because Ms. McFarland's current sentence has been

enhanced by a prior conviction for possession of a controlled substance. Under the recent

case of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), a conviction for possession

of a controlled substance is void and therefore cannot be used to enhance a defendant's

current sentence. *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796

(1986) ("[A] prior conviction . . . which is constitutionally invalid on its face may not be

considered" as part of the offender score.). Ms. McFarland is entitled to resentencing so

her offender score may be adjusted to comport with *Blake*.

Theoretically, our analysis could end here. However, because the sentencing court

and parties have expressed confusion over the meaning of *McFarland* III, we write to

provide additional guidance for the proceedings on remand.

*Background of the SRA*

The SRA was enacted in 1981. Prior to that time, judges enjoyed broad sentencing

discretion. Judges would set minimum and maximum terms of imprisonment and the

Board of Prison Terms and Paroles would determine just how much of the sentence

would be served. *See generally* former chapter 9.95 RCW (1979). Under the

indeterminate sentencing regime, judges had near unfettered discretion to decide when to run sentences concurrently or consecutively. Former RCW 9.92.080 (1971). The extensive power reserved for sentencing judges left little room for appellate review. *See* DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 §9.2 (1985).

The goal of pre-SRA indeterminate sentencing was to allow for rehabilitation and redemption. *Id*. at 1-1. But this was not often realized. Instead, pre-SRA sentences were frequently disproportionate and racially skewed. Dan Kilpatrick & Jack Brummel, *Sentencing Study*, 52 WASH. L. REV. 103, 118 (1976). The SRA was enacted to address these shortcomings by structuring a judge's discretion in a way that ties sentencing decisions to the crime or crimes of conviction. Under the SRA, each count of conviction is assigned a determinate sentencing range based on the statute of conviction and the defendant's offender score (calculated from the defendant's criminal history). When a defendant is convicted of multiple counts of conviction under the SRA, the counts must generally run concurrently. RCW 9.94A.589(1)(a). But there are some exceptions for certain types of convictions, including firearms. RCW 9.94A.589(1)(b)-(d).

While the SRA reduced judicial discretion at sentencing, it did not eliminate it altogether. RCW 9.94A.535 authorizes judges to depart from standard sentencing ranges.

But the ability to depart is limited. To impose a sentence below the standard range, the sentencing court must find "substantial and compelling" mitigating circumstances, "established by a preponderance of the evidence." RCW 9.94A.535(1). The current version of the SRA provides a list of 11 legislatively recognized circumstances a sentencing court may consider for purposes of a downward departure. *Id*. This list is not "exclusive." *Id*.

In deciding whether a particular circumstance qualifies for departure from the standard range, the focus is on legislative intent. The legislature is tasked with defining crimes and setting the parameters for punishment. *State v. Law*, 154 Wn.2d 85, 92, 110 P.3d 717 (2005). In imposing a sentence under the SRA, a court must give deference to the legislature's prerogatives. *Id*. Judges cannot impose sentences outside the legislatively directed standard range based on policy disagreements. *Id.* at 95-96. In the same vein, a judge cannot impose a nonstandard range sentence based on the judge's assessment of factors that have already been taken into account by the legislature. *Id.* at 95-97.

Another change brought by the SRA is increased appellate review. Imposition of a standard range sentence is not subject to appellate review. RCW 9.94A.585(1). But appellate courts have a role to play in assessing whether departures from the standard

ranges are or are not appropriate. RCW 9.94A.585(4). The legislature has encouraged

the appellate courts to develop "a common law of sentencing within the state."

RCW 9.94A.585(6).

*Ms. McFarland's eligibility for a nonstandard range sentence under the SRA*

Ms. McFarland's case is governed by one of the 11 legislatively recognized bases

for an exceptional sentence downward. RCW 9.94A.535(1)(g). Given this circumstance,

the question of whether to grant a sentencing departure is not governed by whether

Ms. McFarland's case presents a mitigating fact not already taken into account by the

legislature. *Cf. Law*, 154 Wn.2d at 95 (two-part test governs the question of whether

a nonenumerated factor qualifies for departure). By enacting RCW 9.94A.535(1)(g),

the legislature has recognized the SRA does not take into account the appropriateness of

all sentences imposed pursuant to RCW 9.94A.589's multiple offense aggravator. Thus,

if a sentencing court finds the legislatively prescribed presumptive sentence is "clearly

excessive" in light of the purposes of RCW 9.94A.010, it may award a downward

departure. RCW 9.94A.535(1)(g).

This court has held in prior decisions that a sentencing court can find exceptional

circumstances based on operation of the multiple offense aggravator only when the effect

of additional crimes is "nonexistent, trivial or trifling." *State v. Sanchez*, 69 Wn. App.

255, 261, 848 P.2d 208 (1993); *see also State v. Kinneman*, 120 Wn. App. 327, 346,

84 P.3d 884 (2003); *State v. Calvert*, 79 Wn. App. 569, 582-83, 903 P.2d 1003 (1995);

*State v. Fitch*, 78 Wn. App. 546, 551, 897 P.2d 424 (1995); *State v. Hortman*, 76 Wn.

App. 454, 463-64, 886 P.2d 234 (1994).

As we recognized in *McFarland* III, the nonexistent/trifling test does not account

for our Supreme Court's decision in *McFarland* II. *McFarland* II makes plain that the test

for whether operation of the multiple offense aggravator results in a clearly excessive

sentence turns on analysis of the purposes of the SRA, as expressed in RCW 9.94A.010.

*McFarland* II's emphasis on RCW 9.94A.010 instead of the nonexistent/trifling

test is important. Prior cases establishing the nonexistent/trifling test all addressed

circumstances where a sentencing court took an all-or-nothing approach to the question

of whether to grant relief from operation of the multiple offense aggravator. In those

cases, the question was whether there was an appreciable difference, in terms of the

impact of the crime, between the defendant being convicted of one charge or all charges.

But nothing in RCW 9.94A.535(1)(g) requires an all-or-nothing approach. A judge may

decide the multiple offense aggravator will not result in an excessive sentence so long

as some, but not all, counts of conviction are ordered to run consecutively.

13

Focusing on the RCW 9.94A.010 factors allows for a more nuanced assessment of the excessive punishment question than the pre-*McFarland* II nonexistent/trifling test. RCW 9.94A.010's policy concerns generally recognize that a defendant who commits multiple crimes should be punished more harshly than one who commits only one crime. Proportionate sentencing,[4] respect for law,[5] commensurate punishment,[6] and public safety[7] typically require this result. As recognized in our prior case law, the need for a harsher penalty is not borne out if the difference between one crime and multiple crimes is trifling or trivial. But the question regarding excessive punishment is not answered simply by asking the singular question of whether the difference in severity of the defendant's offenses is trifling or nonexistent. Instead, the sentencing court should look at each count of conviction and ask whether, with each additional conviction, the impact of the defendant's offense conduct becomes duplicative in terms of the policy considerations set forth in RCW 9.94A.010. If at some point added punishment becomes excessive, the court may decide an exceptional sentence downward is appropriate.

---

[4] RCW 9.94A.010(1).
[5] RCW 9.94A.010(2).
[6] RCW 9.94A.010(3).
[7] RCW 9.94A.010(4), (7).

Determining that operation of the multiple offense aggravator results in excessive punishment does not require finding that the prosecution engaged in misconduct. *See Sanchez*, 69 Wn. App. at 262. The executive branch of our state government is tasked with charging decisions. Sentencing, in contrast, lies with the courts. While a sentencing court must defer to the legislature's guidelines regarding punishment, there is no separate requirement that the court defer to the prosecutor's charging decisions. "The question facing a sentencing court is whether the multiple offense [aggravator] results in a sentence which is clearly excessive, not the [State's] rationale for charging multiple offenses in the first place." *Fitch*, 78 Wn. App. at 554.

Nor does RCW 9.94A.535(1)(g)'s departure analysis turn on whether the defendant's sentence is excessive when compared to other individuals convicted or charged with similar crimes. Our Supreme Court long ago rejected the relevance of such comparisons under the SRA:

> An accurate record of all similar cases, with the same salient factors (whatever that means) would require proof of the facts of such cases from all other 38 counties. Who makes the choice? Who bears the burden to produce? Short of production of the entire trial record, how can the court determine what are the same salient factors? It appears obvious to us that the Legislature never contemplated such a burden and delay as would result from such a requirement and we decline to adopt it.

*State v. Ritchie*, 126 Wn.2d 388, 397, 894 P.2d 1308 (1995).

15

Rather than focusing on the appropriateness of a prosecutor's charging decisions or a comparison between the defendant's sentence and that of others similarly situated, a departure from the multiple offense aggravator under RCW 9.94A.535(1)(g) involves analyzing the case currently before the court and the qualities of each of the defendant's counts of conviction. For example, in *Sanchez*, we held there was no qualitative difference between the harm caused by one conviction for an undercover drug sale as opposed to convictions for three sales, all to the same informant and under similar circumstances within a nine-day period of time. 69 Wn. App. at 261-62. By contrast, in *Kinneman*, we recognized there was a qualitative difference between an initial theft of $400 and 67 acts of theft resulting in a total loss of over $200,000 in addition to the foreclosure on four properties. 120 Wn. App. at 346. Thus, we upheld the trial court's decision to treat three counts of conviction as one offense in *Sanchez*, but we reversed the decision to treat 67 acts of theft as one offense in *Kinneman*.[8]

Ms. McFarland is entitled to a resentencing hearing at which the court assesses the propriety of an RCW 9.94A.535(1)(g) departure as set forth in this opinion. In ordering resentencing we are not preordaining any particular result. The defense bears the

---

[8] *Kinneman* did not ask us to address whether at some point between a single count and 67 counts there ceased to be a qualitative difference in the impact of the defendant's criminal conduct. Instead, *Kinneman* took an all-or-nothing approach.

16

burden of establishing grounds for departure. This cannot be met merely by (incorrectly)

claiming our court has given a green light to a sentence below the standard range.[9] At the

same time, the proceedings on remand must not be treated as a mere formality or useless

act. The exercise of sentencing discretion is an awesome power. It involves far more than

reciting some magical words or checking boxes on a form. The sentencing court must

carefully consider the circumstances of Ms. McFarland's case and the statutory standard

set forth at RCW 9.94A.010 and ask whether, at some point between one firearm

conviction and 13,[10] the amount of punishment contemplated by a technical operation

of the multiple offense aggravator becomes excessive.

*Resentencing must occur before a different judge*

Ms. McFarland's sentencing judge has extensive experience as a judicial officer,

prosecutor, and defense lawyer. He possesses great knowledge of Washington law and

the history of the SRA. But the judge's oral and written remarks indicate he has become

---

[9] Nor, as explained elsewhere in this opinion, can the defense discharge its burden by pointing out that Ms. McFarland's boyfriend received a different sentence. The focus is on Ms. McFarland's conduct, not sentences received by others or the prosecutor's different charging decisions.

[10] In its briefing, the State suggests Ms. McFarland should be held accountable for 18 firearms, including the 8 firearms that were never recovered. The convictions here do not encompass all 18 stolen firearms. In deciding whether Ms. McFarland's punishment is excessive, the court is confined to the counts of conviction. Unproven conduct is not part of the analysis. RCW 9.94A.530(2).

entrenched in a view of the law that is not shared by a majority of our Supreme Court or this court. The judge's repeated failure to comply with orders on remand raises a reasonable concern over his ability to impartially comply with a third remand order. Both Ms. McFarland and the State deserve finality. Reassignment to a different judicial officer for resentencing is warranted under these circumstances.

CONCLUSION

Ms. McFarland's judgment and sentence is reversed. This matter is remanded for resentencing before a different judicial officer pursuant to the terms of this opinion as well as the decisions in *McFarland* II and *McFarland* III.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.

18