FILED
AUGUST 30, 2022
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38012-2-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 38013-1-III, |
| | ) | No. 38014-9-III, |
| v. | ) | No. 38015-7-III) |
| | ) | |
| CHRISTOPHER DOUGLAS SHELDON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Prior to briefing, we had granted the State's

RAP 7.2(e) motion for it to ask the trial court to amend the judgments on appeal by

dismissing Christopher Sheldon's convictions for unlawful possession of a controlled

substance (UPCS). On remand to vacate those convictions, Mr. Sheldon renewed his

request for a prison-based drug offender sentencing alternative (DOSA). The trial judge,

deferring to the intent of the original sentencing judge, denied Mr. Sheldon's request.

On appeal, Mr. Sheldon argues the trial court erred by not exercising independent

discretion when it considered his renewed DOSA request. We affirm because we did not

authorize the trial court to resentence Mr. Sheldon in this instance, where his offender

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

score was unaffected by the vacated convictions.

FACTS

On October 6, 2020, Christopher Douglas Sheldon pleaded guilty to a number of

charges in four separate causes. Those charges are summarized below:

| Cause Number | Counts | Charges |
|---|---|---|
| No. 19-1-04611-32[1] | 2 | UPCS with jail enhancement |
| No. 19-1-04695-32[2] | 1 | 1st degree unlawful possession of a firearm |
| | 1 | UPCS |
| No. 19-1-11219-32[3] | 1 | 1st degree unlawful possession of a firearm |
| No. 20-1-02575-32[4] | 2 | Residential burglary |
| | 1 | 1st degree trafficking of stolen property |
| | 3 | UPCS |

Pursuant to the plea agreement, the State agreed to recommend the standard

sentence range on all counts to run concurrently, to not file further charges, and to

procure a declination letter from the federal prosecutors on potential federal charges. The

State agreed Mr. Sheldon could argue for a prison-based DOSA for each cause number.

---

[1] Clerk's Papers (CP) at 420-29.

[2] CP at 405-14.

[3] CP at 390-98.

[4] CP at 373-82.

2

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

Mr. Sheldon's criminal history, not including the above charges, consists of 10 juvenile felony convictions and 22 adult felony convictions. This history includes 6 violent offenses committed between 1992 and 2001.

*First sentencing*

Prior to his sentencing hearing, Mr. Sheldon filed a lengthy memorandum in which he argued he was eligible for a prison-based DOSA pursuant to RCW 9.94A.660 and such a sentence would be appropriate. A portion of Mr. Sheldon's sentencing memorandum was a mitigation packet, filed under seal due to the sensitive nature of the contents.

Mr. Sheldon's sentencing occurred on January 20, 2021, with Judge Michelle Szambelan presiding. Judge Szambelan told the parties she had read and carefully considered everything Mr. Sheldon submitted, including the mitigation packet. Defense counsel highlighted trauma experienced by Mr. Sheldon in his youth and argued that a DOSA was appropriate and might be successful. The State argued against the request, noting that Mr. Sheldon once received a DOSA but continued to reoffend. In denying Mr. Sheldon's DOSA request, the court explained:

> I'm concerned that, while you were previously out on a DOSA, you committed more crimes and then you got a break. And those are pretty recent. . . .
>        . . . .
>        I'm well aware that, frankly, awful childhoods lead to awful choices, and that's a problem. And typically I am all about rehabilitation. And I

3

> hope that, while I'm not going to go with the DOSA . . . I am making a finding that chemical dependency contributed to the commission of these felonies.
>
> . . . [T]his is the most serious charge that's even allowed in DOSA. And it's proportionate based on [your offender score] being a nine-plus. And even though I know the State's not asking for the free crimes enhancement, . . . basically you're getting a whole bunch of free stuff because you have so many felonies.

Report of Proceedings (RP) (Jan. 20, 2021) at 64-65. After some discussion regarding

Mr. Sheldon's codefendants' sentences, the court concluded:

> Okay. So with reducing the risk of re-offending, I agree that rehabilitation will certainly give us the best odds, but it's—you have a track record where it . . . hasn't worked. And at some point, with two pages of felony convictions and kind of the pattern of what you've done most recently with the three convictions, you know, after that opportunity, frankly, [you are receiving a break for] not . . . hav[ing the convictions] run consecutive . . . .

RP (Jan. 20, 2021) at 66-67.

The court calculated Mr. Sheldon's offender score as 9+ and imposed the State's

recommended sentence of 116 months, with all counts to run concurrently, followed by

12 months of community custody.[5]

With respect to legal financial obligations (LFOs), the court imposed the $500

mandatory crime victim assessment, struck the preprinted criminal filing fee of $200,

---

[5] Twelve months of community custody are automatically imposed for drug-related convictions under chapter 69.50 RCW. RCW 9.94A.701(3)(c).

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

struck the preprinted deoxyribonucleic acid (DNA) collection fee of $100, and wrote

"$500" in the space that designated the total. Clerk's Papers (CP) at 515-16.

Mr. Sheldon timely appealed.

PROCEDURE ON APPEAL

Soon after Mr. Sheldon filed his appeal, the Washington Supreme Court issued

*State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The *Blake* court held that the

portion of the statute criminalizing simple drug possession was unconstitutional because

it criminalized innocent and passive possession. *Id.* at 195.

Soon after, the State filed a RAP 7.2(e) motion to authorize the superior court to

amend the judgments on appeal by vacating Mr. Sheldon's UPCS convictions. In its

motion, the State noted: "The defendant may also be entitled to resentencing for the

remaining counts *unless his . . . offender score is unaffected by the* [*vacation of the*

*UPCS*] *convictions.*" Mot. to Authorize Spokane County Super. Ct. to Vacate PCS

Charges & Remand for Resentencing Contingent on Disposition of Mot. to Recons., *State*

*v. Sheldon*, No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III;

No. 38015-7-III) at 1-2 (Wash. Ct. App. Mar. 8, 2021) (emphasis added). Our

commissioner considered the motion and ruled:

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

> In accordance with RAP 7.2(e)(2), once the State provides this Court with a copy of the amended judgment and sentence demonstrating the superior court has decided the motion to vacate, the stay will be lifted and this Court will consider the State's motion to authorize the superior court to vacate the [U]PCS charges and remand for resentencing.

Comm'r's Notation Ruling, *State v. Sheldon*, No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III) (Wash. Ct. App. Apr. 27, 2021).

Blake *resentencing*

Judge Harold Clarke presided over the State's motion to vacate the UPCS convictions. During the State's motion, Mr. Sheldon renewed his request for a prison-based DOSA. He advised Judge Clarke he had presented mitigating evidence months earlier, when Judge Szambelan heard argument from both parties and the victim. He explained Judge Szambelan denied his DOSA request, and while his appeal was pending, *Blake* was decided. Defense counsel noted:

> So we're in kind of an interesting situation here. In speaking with the appellate attorney, it makes the most sense to deal with these vacations now. But at the same time we have to request the Court impose the prison DOSA. I think the reasons are equally good now as they were back in January.

RP (Aug. 20, 2021) at 8-9.

Defense counsel explained Mr. Sheldon's history of trauma and recognition that he needs to change, and asked the court to impose a prison-based DOSA on the remaining

6

cause numbers. He also said, "I think the [S]tate is accurate that we don't need to readdress the legal financial obligations. But, Mr. Sheldon was indigent at the time of sentencing. Nothing has changed in terms of his financial circumstances."

RP (Aug. 20, 2021) at 10.

The State agreed the January sentencing hearing was contested despite being the end result of a plea agreement. It argued Mr. Sheldon's criminal history includes 21 adult felonies and 10 juvenile felonies, some of which were violent offenses. The State asked to incorporate by reference the original record before Judge Szambelan, which contained extensive briefing and arguments. It argued:

> Mr. Sheldon is not a good candidate for DOSA. He received a DOSA previously. And I was the prosecutor in that matter. . . . We had agreed that he could do the DOSA, do it concurrent to a sentence he was receiving, which constituted an exceptional sentence at that time.
>
> Mr. Sheldon upon release repeatedly started reoffending. When Your Honor looks at the offense dates on each matter, it was a constant stream of new offenses over 2019 and 2020.

RP (Aug. 20, 2021) at 12-13. The State advised Judge Clarke that Judge Szambelan sentenced Mr. Sheldon to the high end, given the charges. The State agreed that *Blake* required vacation of the affected convictions and that it was appropriate for Mr. Sheldon to ask for a DOSA, but it should not be granted.

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

Mr. Sheldon addressed the court and asked for a DOSA, stating, "I think it would be the best thing. I got to get out and get a new life. . . ." RP (Aug. 20, 2021) at 15.

Judge Clarke vacated the UPCS convictions under *Blake* and the associated community custody term of 12 months. With respect to the paragraph assessing LFOs, the court wrote "previously imposed." CP at 653. It did not strike the preprinted $500 victim assessment, the preprinted $200 criminal filing fee, or the preprinted $100 DNA collection fee. Also, it left blank the space that designated the total.

The court then discussed its practice for resentencing offenders:

> It has been kind of my philosophy—of course we haven't had an appellate case come down yet—but what I have been doing on the Blake cases . . . with the understanding that the original sentence or the original judgment and sentence wasn't declared to be inappropriate . . . is to follow the philosophy of the sentencing judge to the sense I can ascertain that. For example, if the judge imposed a mid-range sentence, the presumptive point on the mid range I have followed. . . .
> . . . .
> . . . I will impose the sentence that Judge Szambelan imposed after we have vacated the convictions. In this case, as in others I have had, it stays the same; stays at 116 [months] at the high end [of the standard range] . . . .

RP (Aug. 20, 2021) at 16-18.

On August 31, 2021, this court lifted the stay and granted the State's RAP 7.2(e) motion to authorize the superior court to formally enter the amended judgments.

8

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

ANALYSIS

A.   NO WAIVER OF RIGHT TO APPEAL THE AMENDED JUDGMENTS

Preliminarily, the State notes that Mr. Sheldon failed to appeal the amended judgments, which are the subject of this appeal. It urges us to consider the appeal of the resentencing issue nonetheless. Mr. Sheldon agrees. For the reasons discussed below, we accept the parties' agreement.

Trial courts may hear certain postjudgment motions where authorized. RAP 7.2(e). Where the trial court's determination of the postjudgment motion would change a decision under review by this court, it must obtain permission from this court before formally entering the order. *Id.* Relevant to the question of appealability here, RAP 7.2(e) provides: "Except as provided [by RAP] 2.4, a party may only obtain review of the decision on the postjudgment motion by initiating a separate review in the manner and within the time provided by these rules."

Here, the State moved the trial court to vacate Mr. Sheldon's UPCS convictions and to resentence him if his offender score would change. We later authorized entry of the amended judgments. Thus, except as provided by RAP 2.4, Mr. Sheldon was required to timely appeal the amended judgments. The parties do not argue, nor do we see, any RAP 2.4 provision that would permit review of the amended judgments.

9

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

But under article I, section 22, of the Washington Constitution, a person who has been convicted of a crime has the right to appeal. "In a criminal appeal of right, knowing waiver by the defendant is required to dismiss an appeal." *State v. Tomal*, 133 Wn.2d 985, 989, 948 P.2d 833 (1997). There is no presumption in favor of waiver and the State carries the burden of demonstrating that a convicted defendant has voluntarily, knowingly, and intelligently waived the right to appeal. *State v. Sweet*, 90 Wn.2d 282, 286, 581 P.2d 579 (1978). Waiver of this right can be established by showing that the trial court immediately after sentencing correctly advised the defendant of his right to timely appeal. *Tomal*, 133 Wn.2d at 990; CrR 7.2(b).

Here, Judge Clarke did not advise Mr. Sheldon he had 30 days to appeal the amended judgments. Thus, the State cannot establish waiver. We conclude that Mr. Sheldon did not waive his right to appeal the amended judgments. For this reason, we decline to dismiss his appeal and proceed to its merits.

B.      THE RESENTENCING COURT'S AUTHORITY WAS LIMITED TO VACATING THE
        PRIOR UPCS CONVICTIONS

Mr. Sheldon contends we directed the trial court to conduct a full resentencing, and argues the trial court abused its discretion by not exercising its independent authority to consider his DOSA request. We disagree with his contention.

10

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

Under RAP 7.2, a trial court has limited authority to act while a matter is on appeal. Under the rule, a trial court has authority to consider a motion, but if the ruling would change a decision being reviewed, appellate court permission must first be obtained prior to formal entry of the trial court's order. RAP 7.2(e).

Here, the State sought permission from this court for the superior court to amend the judgments on appeal by vacating Mr. Sheldon's UPCS convictions. Separately, it noted that Mr. Sheldon might be entitled to resentencing, unless his offender score was unaffected by the vacated UPCS convictions. Our ruling authorized the trial court to consider the State's request.

Mr. Sheldon's offender score was unaffected by the vacation of his six UPCS convictions—it was 9+ before, and it was 9+ after. Our ruling thus did not authorize resentencing in this instance. This is so despite the State on remand misadvising Judge Clarke he had authority to consider Mr. Sheldon's renewed DOSA request. We conclude the trial court did not err when it refused to exercise its own discretion to decide Mr. Sheldon's renewed DOSA request. Our ruling would be different had resentencing affected Mr. Sheldon's offender score. *See State v. Kilgore*, 167 Wn.2d 28, 41-42, 216 P.3d 393 (2009) (remand for resentencing is required where a recalculated offender score reduces the applicable sentencing range, but resentencing is not required where

11

presumptive range remains the same); *State v. McFarland*, 18 Wn. App. 2d 528, 492 P.3d 829 (2021) (remand for resentencing requires a trial court to exercise independent discretion).

    C.    SCRIVENER'S ERROR

Mr. Sheldon contends his amended judgments contain a scrivener's error in the LFO portion. He asserts the judgments can be read as imposing the $100 DNA collection and the $200 court filing fees. He asks this court to remand with instructions to strike those fees. The State responds that the boilerplate inclusion of the fees is immaterial because the orders contain no total and explicitly provide that the LFOs are those previously imposed. We agree with the State.

On remand, both parties agreed that they need not readdress LFOs. The defense reminded the court that "Mr. Sheldon was indigent at the time of sentencing. Nothing has changed in terms of his financial circumstances." RP (Aug. 20, 2021) at 10. Judge Clarke stated, "I agree with [defense counsel and] they will stay as they were. . . . I'm worried about putting in new LFO orders, so I [will] write in previously imposed as ordered." RP (Aug. 20, 2021) at 16. Although the LFO sections in the amended judgments list the $500 victim assessment, the $200 criminal filing fee, and the $100 DNA collection fee, there is no total sum listed. And immediately below the subsection

12

No. 38012-2-III (consolidated with No. 38013-1-III; No. 38014-9-III; No. 38015-7-III)
*State v. Sheldon*

heading, a handwritten note indicates "previously imposed." CP at 653, 668, 687-88.

This makes clear that the fees being imposed were those previously imposed. There is no

need to strike the preprinted untallied fees or otherwise amend the judgments.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

13