[No. 22950-5-III.   Division Three.   August 4, 2005.]

THE STATE OF WASHINGTON, *Appellant*, v. RYAN WAYNE MURRAY, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for appellant.

*David N. Gasch* (of *Gasch Law Office*), for respondent.

¶1 SCHULTHEIS, J. — An offender eligible for a drug offender sentencing alternative (DOSA) may receive a sentence that includes a period of confinement equal to one-half of the midpoint of the standard sentence range, along with community custody for the remainder of the midpoint of the standard range. RCW 9.94A.660(2). Ryan Murray pleaded guilty to one count of manufacture of a controlled substance (methamphetamine). The trial court concluded that Mr. Murray was entitled to an exceptional sentence downward and imposed a DOSA sentence with a period of confinement significantly shorter than one-half of the midpoint of the standard sentence.

¶2 On appeal, the State contends the trial court's findings of fact do not support an exceptional sentence downward. The State also challenges the trial court's creation of a midpoint in contravention of the DOSA statute. Because we conclude that the trial court erred in imposing an exceptional sentence without substantial and compelling reasons and in creating a hybrid DOSA/exceptional sentence, we vacate the sentence and remand for resentencing.

FACTS

¶3 In December 2002, police officers executed a warrant to arrest Jill Borkowski in her Spokane apartment. Ms. Borkowski admitted the officers and asked them to tell her boyfriend, Mr. Murray, that she was being arrested. Mr. Murray was in the apartment shower at the time. As officers walked toward the bathroom, they saw in plain view substances used to manufacture methamphetamine. On the basis of this observation, they arrested him for manufacturing methamphetamine. Ms. Borkowski and Mr. Murray gave consent to search the apartment and officers found additional items used to manufacture methamphetamine, including a hydrochloric acid generator. They also found the couple's nearly four-year-old son, T.M., in the apartment. The child was taken to Child Protective Services and was eventually placed with foster parents.

¶4 Mr. Murray was charged by information with manufacturing a controlled substance—methamphetamine—while a person under the age of 18 was on the premises. RCW 9.94A.605; RCW 69.50.401. In February 2004, he entered a guilty plea to one count of the manufacture of methamphetamine. With the 24-month enhancement for presence of a juvenile, the standard range for Mr. Murray's sentence was 96 to 120 months. The prosecutor recommended that the court take no action on a second charge of manufacture and that the court impose a DOSA sentence of 54 months of incarceration with 54 months of community custody.

¶5 At the sentencing hearing held in March 2004, several witnesses testified for Mr. Murray, including T.M.'s foster father and Mr. Murray's boss. All witnesses stated that Mr. Murray had turned his life around, that he was clean, sober, and working steadily, and that he had support from family and friends in the community. Mr. Murray and Ms. Borkowski (now married to Mr. Murray) testified that they had completed substance abuse programs, had re-

mained drug free, and had convinced the Department of Social and Health Services to terminate dependency proceedings regarding T.M.

¶6 The trial court found that the "new support environment" and other mitigation factors permitted it to vary the standard range and to compute a DOSA sentence with a midpoint lower than the standard range midpoint. Report of Proceedings (RP) at 29. Although the midpoint of the standard range was 108, the court found that a midpoint of 88 would meet "the ends of justice." RP at 34. Over the State's objection, the court imposed a DOSA sentence of 44 *months of incarceration (one-half of the new midpoint)* and 44 months of community custody (the remainder of the new midpoint).

¶7 The State timely appeals Mr. Murray's exceptional sentence. Mr. Murray cross-appeals, seeking "review by the designated appellate court of the appeal by the State." Clerk's Papers (CP) at 47.

## EXCEPTIONAL SENTENCE DOWNWARD AND DOSA

¶8 An exceptional sentence above or below the standard range may be imposed for substantial and compelling reasons. RCW 9.94A.535; *State v. Jackson*, 150 Wn.2d 251, 273, 76 P.3d 217 (2003). Washington courts may consider a nonexclusive statutory list of mitigating factors that support an exceptional sentence downward, including such reasons as the defendant's unwillingness to participate in the crime and his or her capacity to appreciate the wrongfulness of the act. RCW 9.94A.535(1). Generally, "[a]n exceptional sentence is appropriate only when the circumstances of the crime distinguish it from other crimes of the same statutory category." *State v. Pennington*, 112 Wn.2d 606, 610, 772 P.2d 1009 (1989). We will reverse an exceptional sentence on appeal only if we find that the reasons relied upon by the sentencing court are not supported by the record under a clearly erroneous standard; that these reasons do not justify an exceptional sentence under a de

novo standard of review; or that the sentence is clearly excessive or too lenient under an abuse of discretion standard. *Jackson*, 150 Wn.2d at 273-74; *Pennington*, 112 Wn.2d at 608.

¶9 The reasons cited by the trial court in its findings of fact to support the exceptional sentence include the following:

8.  The Foster Father of [T.M.], Fred Nolan, was present for this hearing and spoke in support of the defendant and continues to have contact with him and his child.

9.  Child Protective Services returned the child to his mother, Jill Borkowski, in April, 2003. The defendant has regular contact with his son, although he lives in a separate residence for purposes of facilitating his recovery from drug addiction.

10. The defendant's actions and own statements indicate he is chemically dependant.

11. The defendant has completed outpatient treatment and provided urine analysis samples to support his sobriety.

12. The defendant has continued to participate in counseling without court order.

13. The defendant is supported by strong ties to family and community, as evidenced by those present speaking on his behalf.

14. The defendant has maintained gainful employment despite the fact that sentencing in this matter will result in prolonged confinement.

15. The Foster Family continues to support the defendant and his wife and child.

16. Child Protective Services has monitored this family and terminated the dependency action based upon the actions and compliance of the family.

17. The defendant is directly involved with his children and family, has acknowledged his addiction, completed treatment and shown abstinence for over one year, and has continued to show positive accomplishments in his life.

CP at 29-30. Based on these findings, the trial court concluded "there are substantial and compelling reasons to

justify an exceptional sentence in this case. Imposition of the standard range sentence is not necessary to effectuate the purposes of the chapter." CP at 31. The midpoint of Mr. Murray's presumptive sentence, including the enhancement, was 108 months. However, the trial court concluded that

> [a] DOSA sentence with a mid-range sentence of 88 months, resulting in 44 months confinement and 44 months Community Custody[,] will effectuate the goals of the chapter, hold the defendant accountable, and provide him the opportunity to continue with his treatment and counseling for chemical dependency.

CP at 31.

¶10 The State does not dispute the factual support for the trial court's findings of fact and does not argue that the sentence is clearly too lenient. Consequently, we address only the second inquiry on review of this exceptional sentence: whether the findings justify a sentence outside the standard range as a matter of law. *Pennington*, 112 Wn.2d at 609. Mr. Murray agrees with the State that the trial court erred to the extent that it based his exceptional sentence on his personal characteristics. He requests a remand for the trial court to determine whether the circumstances of the crime distinguish it from other crimes in the same category and support a downward departure.

¶11 As Mr. Murray recognizes, the trial court's reasons for imposing an exceptional sentence do not justify a sentence outside the presumptive range. The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, "was designed to promote several significant interests, including protection of the public, the need for rehabilitation, and the need to make frugal use of state resources." *State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987). To that end, "[t]he presumptive sentence ranges established for each crime represent the legislative judgment as to how these interests shall best be accommodated." *Id.* A trial court's subjective conclusion that the presumptive range does not adequately address rehabilitative concerns or the personal

characteristics of the offender is not a substantial and compelling reason justifying a departure. *State v. Allert*, 117 Wn.2d 156, 169, 815 P.2d 752 (1991); *Pascal*, 108 Wn.2d at 137-38. Neither addictions nor other personal circumstances of defendants have been found to support exceptional sentences downward. *See, e.g.,* RCW 9.94A.535(1)(e) (voluntary use of alcohol or drugs is excluded as a mitigating factor); *State v. Freitag*, 127 Wn.2d 141, 145, 896 P.2d 1254 (1995) (the defendant's desire to improve through community service); *State v. Estrella*, 115 Wn.2d 350, 353-54, 798 P.2d 289 (1990) (willingness to obtain treatment and attempts to gain employment); *State v. Amo*, 76 Wn. App. 129, 133, 882 P.2d 1188 (1994) (potential loss of parental rights); *State v. Hodges*, 70 Wn. App. 621, 623, 855 P.2d 291 (1993) ("extraordinary community support" and efforts at self-improvement).

¶12 Here, none of the trial court's reasons for imposing an exceptional sentence qualify as substantial or compelling reasons to depart from the presumptive range. The findings do not address how the circumstances of Mr. Murray's crime distinguish it from other crimes in the same category. *Pennington*, 112 Wn.2d at 610. Each finding reflects the trial court's subjective opinion that the presumptive range does not adequately meet Mr. Murray's personal circumstances. And an extraordinary sentence based on such an opinion is not authorized under the SRA. *Allert*, 117 Wn.2d at 169. *See also State v. Ritchie*, 126 Wn.2d 388, 394, 894 P.2d 1308 (1995) (by imposing an exceptional sentence, the court invaded the province of the legislature to fix the punishment of crimes). Consequently, we vacate the sentence and remand for resentencing, allowing the trial court to exercise its discretion again in a manner consistent with this court's opinion. *State v. Flett*, 98 Wn. App. 799, 808, 992 P.2d 1028 (2000).

¶13 On remand, the trial court may again consider a DOSA sentence. But the trial court may not construct a "hybrid" of an exceptional sentence and a DOSA sentence, as it has done here. DOSA was created as a

treatment-based alternative for certain drug offenders. LAWS OF 1995, ch. 108. A DOSA sentence is an alternative form of standard range sentence, not an exceptional sentence. *State v. Smith*, 118 Wn. App. 288, 292, 75 P.3d 986 (2003). The relevant statute provides that when

> the standard sentence range is greater than one year and the sentencing court determines that the offender is eligible for this alternative and that the offender and the community will benefit from the use of the alternative, the judge may waive imposition of a sentence within the standard sentence range and impose a sentence that *must* include a period of total confinement in a state facility for one-half of the midpoint of the standard sentence range.

RCW 9.94A.660(2) (emphasis added). The offender must *also serve a term of community custody*—with substance abuse treatment—for the remainder of the midpoint of the standard range. RCW 9.94A.660(2)(a).

¶14 Our principal concern in interpreting a statute is to implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We begin with the statute's plain language and ordinary meaning. *Id.* The DOSA statute's plain language provides that a trial judge who determines that an alternative sentence would best address an eligible offender's treatment-based rehabilitative needs is required to impose a sentence of incarceration for one-half the midpoint of the standard range and community custody for the remainder of the standard range. RCW 9-.94A .660(2). The statute already addresses the drug treatment needs of the offender and the best interests of the community. A trial court's conclusion that the midpoint prescribed by DOSA is insufficient to meet the needs of a particular offender impermissibly invades the province of the legislature. *Ritchie*, 126 Wn.2d at 394. The sentencing court may impose an exceptional sentence downward based on substantial and compelling reasons, or it may impose a DOSA standard range sentence when appropriate for rehabilitation. It is not authorized under the SRA to impose a hybrid of both.

¶15 Vacated and remanded for resentencing.

KATO, C.J., and BROWN, J., concur.