IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80864-8-I |
| Appellant, | DIVISION ONE |
| v. | |
| ABEBE RICHARD HEHN, | UNPUBLISHED OPINION |
| Respondent. | |

CHUN, J. — The trial court found Abebe Hehn guilty of bail jumping and failure to register as a sex offender. Because of a purported multiplier effect from Hehn's prior convictions and the effect of the bail jumping charge on his presumptive sentence, the trial court imposed an exceptional downward sentence. It also reduced his term of community custody. The State appeals, saying the trial court erred in imposing an exceptional downward sentence. For the reasons discussed below, we remand for resentencing and to impose the full term of community custody, though the trial court may again impose an exceptional downward sentence.

I. BACKGROUND

In 2011, while 17 or 18 years old, Hehn pleaded guilty to third degree rape of a child, requiring him to register as a sex offender for 10 years. In 2015, Hehn pleaded guilty to failure to register. In March 2017, Hehn again pleaded guilty to failure to register, requiring him to register as a sex offender for another 10 years and resulting in 36 months of community custody following his conviction.

Citations and pin cites are based on the Westlaw online version of the cited material.

In September 2017, apparently homeless, Hehn registered his address at the Everett Gospel Mission. If a person subject to sex offender registration requirements lives in "temporary homeless housing" or lives outdoors, they must check in weekly with the sheriff's office. Hehn was in the Department of Corrections' custody for three weeks following October 28, 2017 and again on January 7, 2018. But otherwise, between September 18, 2017, and January 9, 2018, he did not check in with the Snohomish County Sheriff's office or check in or register with any other jurisdiction.

On January 17, 2018, in this case, the State charged Hehn with failure to register. In March 2018, Hehn failed to appear for an omnibus hearing and the court issued a bench warrant.

The State amended the information to charge Hehn with an additional failure to register charge and four counts of bail jumping. It later filed a second amended information that charged Hehn with only one count of failure to register and one count of bail jumping.

After a bench trial, the trial court found Hehn guilty of bail jumping and failure to register.

Because of Hehn's prior convictions for third degree rape of a child, two counts of failure to register, possession of a controlled substance,[1] and third degree assault, Hehn's offender score for failure to register was nine. Hehn received three points for his rape of a child charge because of a multiplier for sex

---

[1] In light of our Supreme Court's decision in State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021), we expect that, on remand, the trial court will address the validity of this conviction.

offenses, one point for each failure to register, one point for each other felony conviction, one point for the current offense of bail jumping, and another point because he failed to register while on community custody.  Hehn's offender score for bail jumping was seven; one point for each felony conviction, one point for the current offense of failure to register, and another point because he bail jumped while on community custody.  As a result, the standard range for failure to register was 43 to 57 months and the standard range for bail jumping was 33 to 43 months.  The State requested 50 months' confinement for the failure to register charge, running concurrently with 38 months for the bail jumping charge. Hehn requested an exceptional downward sentence of 18 months with no community custody.

Before sentencing, the trial court considered a portion of a documentary by journalist Dan Rather titled "Unwanted in America" that, in part, tracked Hehn's life story.  Hehn was adopted from Ethiopia into a family of about 30 other adopted children and after an allegation that he sexually contacted one of his adopted siblings, pleaded guilty to rape of a child in the third degree.  After his release from prison, Hehn became homeless.  At the sentencing hearing, the trial court stated that it appreciated the opportunity to view the video and for the parties' attention to it in their sentencing memoranda.

The trial court imposed an exceptional downward sentence for the charges, with 25 months' confinement for failure to register running concurrently with 25 months' confinement for bail jumping.  The trial court reasoned that if it

ignored the multiplier effect for the third degree rape of a child charge, Hehn's

offender score for failure to register would be 7, and the new standard range

would be 22 to 29 months. As a part of its exceptional downward sentence, it

imposed 12 months of community custody for failure to register. The court wrote

in its findings of fact and conclusions of law about its departure from standard

sentencing guidelines that Hehn's

> duty to register stems from a conviction as an adult for criminal conduct which occurred when he was youthful (either [17] or [18] years of age). Mr. Hehn has subsequently been affected by poverty, homelessness, and other collateral consequences which may be traced, at least in part, to his status as a registered sex offender and the unique circumstances of his life history.
>
> The court has considered the purpose of the Sentencing Reform Act, which sets forth seven factors for courts to consider in imposing a sentence. On the facts and issues presented in this case, the court struggles to reconcile the following factors: to ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history; to promote respect for the law by providing punishment which is just; to be commensurate with the punishment imposed on others committing similar offenses; to offer the offender an opportunity to improve himself; and to make frugal use of the governments' resources.
>
> This case involves a massive jump in terms of potential incarceration from his prior offenses to the current standard range. After his initial prison sentence for the underlying initial offense (an adult conviction for youthful conduct), on his first offense for Failure to Register the defendant served 30 days in jail. He subsequently served a sentence of 12-months-and-one-day for a subsequent conviction for another combination of offenses which were imposed concurrently, including another conviction for Failing to Register.
>
> For his third Failure to Register conviction, under the standard range, he now faces a sentence that is roughly three times greater than his most recent previous sentence <u>due largely to the multiplier effects of his prior convictions</u>.
>
> The sentence in this matter also involves a conviction for the crime of bail jumping, which adds to the defendant's offender score

and increases his standard range. The court struggles to reconcile the underlying purpose of the crime of bail jumping. <u>Arising from the problem of cases where the state can no longer prove an underlying case due to a defendant's absence from proceedings, the law addressing Bail Jumping is meant to provide a way to hold the defendant accountable. Yet in this case Bail Jumping, although proven, did not impact the state's case or [its] ability to prove the underlying charge.</u>

. . .

<u>However, the court finds that the standard range for Mr. Hehn's current offense, resulting from the multiplier effects of his prior convictions, including convictions unrelated either to his sex offense or his registration requirements, and also including a Bail Jumping conviction for conduct that did not affect the state's ability to prove its case, results in a sentence which is clearly excessive, and does not result in a sentence which promotes respect for the law by providing a sentence which is just.</u>

If not for these multiplier effects he would have an offender score of 7 or lower; at an offender score of 7 his sentence range would be 22-29 months. A midrange of 25 months would be double his prior sentence for Failure to Register, <u>which is an appropriate sentence for these facts and circumstances.</u>

<u>The court further finds that 36 months of community custody is not necessary to protect the public and does not make frugal use of government resources, given the defendant's DOC supervision for his prior convictions.</u> However some further DOC supervision in the community is appropriate upon his release. <u>The court imposes 12 months of Community Custody in this matter.</u>[2]

(Emphasis added.)

The State appeals the exceptional downward sentence and the trial court's reduction of Hehn's community custody term.

## II. <u>ANALYSIS</u>

The State says that substantial evidence does not support the trial court's findings of facts about the multiplier effect of prior convictions and the effect of

---

[2] The State assigns error to the underlined portions of these findings of fact and conclusions of law.

Hehn's bail jumping. It also says the trial court's rationale for the exceptional downward sentence does not justify a departure from the standard range, and that the trial court erred in reducing Hehn's community custody term. Hehn disagrees and says the State waived its claims.

We conclude the State did not waive its claims. And we conclude substantial evidence supports the trial court's finding about the effect of bail jumping. We also conclude that even if substantial evidence supported the trial court's multiplier effect finding, this effect does not constitute a mitigating factor justifying an exceptional downward sentence, but the effect of bail jumping does. Last, we conclude the court erred in reducing the community custody term.

A court may impose a sentence outside the standard range if it finds, considering the purpose of chapter 9.94A RCW, that there are substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A.535. RCW 9.94A.535(1) allows a court to impose an exceptional downward sentence if it finds that mitigating circumstances are established by a preponderance of the evidence. The statute provides an illustrative and nonexclusive list of mitigating factors. RCW 9.94A.535(1). To reverse an exceptional sentence, we must conclude that:

> (1) under a clearly erroneous standard, there is insufficient evidence in the record to support the reasons for imposing an exceptional sentence; (2) under a de novo standard, the reasons supplied by the sentencing court do not justify a departure from the standard range; or (3) under an abuse of discretion standard, the sentence is clearly excessive or clearly too lenient.

6

State v. France, 176 Wn. App. 463, 469, 308 P.3d 812 (2013); RCW 9.94A.585(4). A finding is clearly erroneous "'only if no substantial evidence supports its conclusion. Substantial evidence has been defined as evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" State v. Ferguson, 142 Wn.2d 631, 647 n.76, 15 P.3d 1271 (2001) (internal quotation marks omitted) (quoting State v. Jeannotte, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997)).

A. Waiver

Hehn says the State waived its claim of error related to his sentence because it did not object below to any of the trial court's factual or legal grounds for it. We disagree.

Before the trial court entered its sentence, the State recommended a standard range sentence, objected to the court considering Hehn's unique history when imposing a sentence, contended that the court had no grounds for an exceptional downward sentence, and asserted that any justification for such a sentence must go beyond reciting the purposes of the Sentencing Reform Act (SRA).[3] After the court made its oral ruling, the State offered to assist the trial

---

[3] RCW 9.94A.010 lists the purposes of the SRA and provides:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

court in drafting its ultimate findings; but "[a] party who clearly presents its factual and legal position at trial, but loses, does not waive error by cooperating when a trial court asks that its lawyer provide draft findings and conclusions that reflect the court's announced decision." Gamboa v. Clark, 180 Wn. App. 256, 266, 321 P.3d 1236 (2014).

We thus consider the State's claims of error.

B. Findings of Fact

The State says substantial evidence does not support the trial court's finding that, "For his third Failure to Register conviction, under the standard range, he now faces a sentence that is roughly three times greater than his most recent previous sentence due largely to the multiplier effects of his prior convictions." Because we conclude below that the multiplier effect cannot serve as a mitigating factor justifying an exceptional downward sentence, we do not address whether substantial evidence supports such a finding.

The State also says substantial evidence does not support the trial court's finding that "in this case Bail Jumping, although proven, did not impact the state's case or [its] ability to prove the underlying charge." Hehn counters that his bail jumping did not prevent the State from obtaining a conviction on the failure to

---

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve himself or herself;

(6) Make frugal use of the state's and local governments' resources; and

(7) Reduce the risk of reoffending by offenders in the community.

register charge, so it is supported by substantial evidence. Because a fair-minded person could conclude that this finding is supported by a preponderance of the evidence, we agree with Hehn.

Before Hehn failed to appear for the March 2018 omnibus hearing, the court had set his trial date for the failure to register charge in May 2018. The court did not hold a trial on the failure to register charge until October 2019. At trial, certain witnesses were unable to recall details with varying relation to the allegations against Hehn, including whether they had checked if Hehn was in state custody during the time he allegedly failed to register.

But as the State acknowledges, even if Hehn had not failed to appear at the omnibus hearing, the trial could have been delayed for other reasons, and witnesses could have failed to recall details regardless of when the trial occurred. The State says that because Hehn bears the burden of proving mitigating circumstances, we must hold against him the lack of any evidence suggesting that the trial could have been delayed for other reasons or that witnesses might have failed to recall details for other reasons. But as Hehn notes, the State proved its failure to register charge, and the State cannot obtain more than a conviction. Given the conviction, a fair-minded person could conclude a preponderance of the evidence shows that Hehn's bail jumping did not affect the State's ability to prove his failure to register.

B. Reasons Supplied for an Exceptional Sentence

The State says the reasons the trial court supplied for an exceptional sentence do not justify a departure from the standard range and characterizes the trial court's reasoning as a disagreement with the legislature's scoring rules. Hehn responds that the trial court's recognition of his unique circumstances justified his exceptional downward sentence. The State replies that the recognition of Hehn's circumstances did not constitute a part of the trial court's rationale for imposing a lesser sentence. We conclude that the claimed multiplier effect cannot serve as a mitigating factor here, the impact of the bail jumping charge can, and the trial court did not articulate a connection between Hehn's unique circumstances and the crime such that they constitute a mitigating factor.

<u>Multiplier effect</u>

The trial court concluded that, in part, Hehn's presumptive sentence was clearly excessive because it resulted "from the multiplier effects of his prior convictions, including convictions unrelated either to his sex offense or his registration requirements." The State says this cannot serve as a mitigating factor justifying an exceptional sentence. We agree.

When calculating an offender score for a failure to register conviction, a court must count a prior sex offense conviction as three points; except, a previous failure to register conviction counts as one point. RCW 9.94A.525(18).

In issuing an exceptional sentence, a court may not take into account factors already considered in computing the presumptive range for the offense,

such as an offender's criminal history. State v. Pascal, 108 Wn.2d 125, 137–38, 736 P.2d 1065 (1987) ("The presumptive sentence ranges established for each crime represent [how] the [purposes of the SRA] shall best be accommodated. The trial court's subjective determination that these ranges are unwise, or that they do not adequately advance [those purposes], is not a substantial and compelling reason justifying a departure." (internal citation omitted)); State v. Nordby, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986). It follows that the trial court should not have departed from the legislature's determination that prior sex offenses count as three points or that most other felonies, including Hehn's possession and assault convictions, count as one point in computing the offender scores for a failure to register conviction. RCW 9.94A.525(18). Even if we concluded that substantial evidence supported the trial court's finding about multiplier effects, it cannot serve as a mitigating factor justifying an exceptional downward sentence.[4]

### Bail jumping and multiple offense policy

The trial court also concluded in part that Hehn's sentencing range was clearly excessive because it includes "a Bail Jumping conviction for conduct that did not affect the state's ability to prove its case." The State says that since the court did not make a finding that the effect of bail jumping was not trivial or

---

[4] The trial court also concluded in part that Hehn's sentencing range was clearly excessive because it "does not result in a sentence which promotes respect for the law by providing a sentence which is just." In State v. Powers, this court held that the rationale of "[promoting] respect for the law by providing just punishment" did not constitute a mitigating circumstance justifying an exceptional downward sentence. 78 Wn. App. 264, 270–71, 896 P.2d 754 (1995). We likewise conclude this cannot constitute a mitigating factor justifying an exceptional downward sentence.

trifling, this cannot serve as a mitigating factor justifying an exceptional sentence. Hehn says that the trial court had no obligation to do so. We agree with Hehn.

The most applicable mitigating factor to the trial court's finding is set forth in RCW 9.94A.535(1)(g): "The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter." RCW 9.94A.589(1)(a) provides that "whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score." And here, the trial court sentenced Hehn for two offenses— failure to register and bail jumping.

In State v. Hortman, this court held that, "Whether a given presumptive sentence is clearly excessive in light of the purposes of the SRA is not a subjective determination dependent upon the individual sentencing philosophy of a given judge. Rather, it is an objective inquiry based on the Legislature's own stated purposes for the act." 76 Wn. App. 454, 463, 886 P.2d 234 (1994). It also held that "a presumptive sentence calculated in accord with the multiple offense policy is clearly excessive if the difference between the effects of the first criminal act and the cumulative effects of the subsequent criminal acts is nonexistent, trivial or trifling." Id. at 463–64. It reasoned that the multiple offense policy does not serve the purposes of the SRA "when the difference between the effects of the first act and the cumulative effects of the subsequent acts is de minimis." Id.

at 464. The State says that because the trial court did not find the effect of the bail jumping charge was trivial or trifling, and because there was no basis for such a finding, RCW 9.94A.535(1)(g) cannot serve as a mitigating factor justifying an exceptional downward sentence.

But in State v. Graham, our Supreme Court, when asked to "clarify the factual finding a sentencing judge must make to invoke the multiple offense policy mitigating factor of .535(1)(g)," declined to do so on the ground that the statute is clear as to what it requires. 181 Wn.2d 878, 886–87, 337 P.3d 319 (2014). It recited the statute's directive to consider whether the presumptive sentence is "'clearly excessive in light of the purpose of this chapter, *as expressed in RCW 9.94A.010*'" and stated that sentencing judges should examine each of the policies from subsection .010 when imposing an exceptional sentence under subsection .535(1)(g). Id. (quoting RCW 9.94A.535(1)(g)). Given Graham's holding, it does not appear a trial court must conclude that the difference between the effects of the first criminal act and the cumulative effects of the subsequent criminal acts is nonexistent, trivial, or trifling.[5] We also note that Hortman does not appear to require a court make a "trivial, trifling, or nonexistent" finding, and appears to rule only that such a finding is sufficient to

---

[5] See State v. Elliott, No. 52564-0-II, slip op. at 7-9 (Wash. Ct. App. Mar. 17, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2052564-0-II%20Unpublished%20Opinion. (noting that Graham refused to adopt the "nonexistent, trivial, or trifling" standard and holding that a court mitigating a sentence under RCW 9.94A.535(1)(g) must only consider the SRA policy goals expressed by RCW 9.94A.010); see GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

conclude a mitigating factor under subsection (1)(g) exists. 76 Wn. App. at 463–64.

The trial court's findings of fact and conclusions of law weigh the statutory factors from RCW 9.94A.010.[6] The court also noted that a purpose of the bail jumping statute is to hold a defendant accountable in instances where the state can no longer prove an underlying case because of the defendant's absence from proceedings, and that Hehn's bail jumping did not affect the State's ability to prove its case. The trial court did not err in concluding that Hehn's presumptive sentence was clearly excessive on the ground that the bail jumping charge lengthened it.

But the State correctly notes that, if the application of the multiple offense policy serves as a mitigating circumstance, the trial court reduced Hehn's sentence below what it should have if it merely disregarded the effect of the bail jumping conviction on Hehn's offender score for the failure to register conviction. Without the bail jumping conviction, Hehn's offender score for the failure to register charge would be eight, and the standard range 33 to 43 months; but the court imposed a 25-month sentence, which lies between the standard range of 22 and 29 months for an offender score of seven. Hehn counters that the court

---

[6] From the findings of fact and conclusions of law:

On the facts and issues presented in this case, the court struggles to reconcile the following factors: to ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history; to promote respect for the law by providing punishment which is just; to be commensurate with the punishment imposed on others committing similar offenses; to offer the offender an opportunity to improve himself; and to make frugal use of the governments' resources.

imposed its exceptional downward sentence not just in consideration of the effect of bail jumping, but also in combination with his unique characteristics and upbringing. But as addressed below, the trial court did not articulate a connection between Hehn's life circumstances and the crimes at issue here in a manner justifying an exceptional downward sentence. Thus, even though the trial court properly ruled that the application of the multiple offense policy serves as a mitigating circumstance, it improperly applied that mitigating circumstance.

Hehn's unique circumstances

Hehn counters the State's assertion that the trial court relied on improper considerations in justifying his exceptional downward sentence by saying that it considered his unique history as an adopted and abandoned child as a mitigating circumstance. The State replies that these considerations did not form a part of the trial court's justification for its sentence. We conclude that because the trial court did not explain how Hehn's unique characteristics related to the nature of his crime, its recognition of those circumstances did not constitute a mitigating factor.

At the outset of the trial court's findings of fact and conclusions of law, it stated that

> Hehn's duty to register stems from a conviction as an adult for criminal conduct which occurred when he was youthful (either [17] or [18] years of age). Mr. Hehn has subsequently been affected by poverty, homelessness, and other collateral consequences which may be traced, at least in part, to his status as a registered sex offender and the unique circumstances of his life history.

15

In its oral ruling, it stated that it had viewed the Dan Rather report and that it appreciated the opportunity to do so. It also stated that its sentence was "based on the history, as well as the facts of these particular cases."

A mitigating factor must relate to the crime and distinguish it from others in the same category. State v. Law, 154 Wn.2d 85, 97–98, 110 P.3d 717 (2005). The trial court recognized that Hehn's circumstances were unique, but it did not explicitly connect his poverty, homelessness, status as a sex offender, and his life history to the failure to register and bail jumping convictions. In effect, this finding does not address "how the circumstances of [Hehn's] crime distinguish it from crimes in the same category" as it must. State v. Murray, 128 Wn. App. 718, 725, 116 P.3d 1072 (2005). Because the trial court did not explain how these unique characteristics related to the nature of Hehn's crime, this portion of the trial court's findings and conclusions do not justify its imposition of an exceptional downward sentence.[7]

C. Community Custody

The State says the trial court erred in reducing Hehn's term of community custody from 36 months to 12 months. We agree.

Failure to register constitutes a "sex offense" on a defendant's second or subsequent charge of failure to register. RCW 9.94A.030(47)(a)(v). For sex

---

[7] Hehn also says the trial court's recognition of his youthfulness, on its own, can justify his exceptional downward sentence, citing State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015). But the trial court recognized that Hehn was youthful when he committed the underlying third degree rape charge, not when he committed the crimes at issue in this appeal. Hehn was 27 years old when he committed the crimes at issue here.

offenses not sentenced under RCW 9.94A.507, such as failure to register, a court "shall, in addition to the other terms of the sentence, sentence the offender to community custody for three years." RCW 9.94A.701(1). A sentencing court may reduce this 36-month period of community custody only if necessary, when combined with the defendant's prison term, to avoid exceeding the statutory maximum for the charge. RCW 9.94A.701(1), (9); State v. Bruch, 182 Wn.2d 854, 867, 346 P.3d 724 (2015).

Hehn cites no law allowing a departure from the mandatory language provided by RCW 9.94A.701(1), and the trial court did not reduce his community custody term to avoid exceeding the statutory maximum. Hehn says the trial court properly relied on the same grounds for reducing his community custody term as it did his prison sentence, but RCW 9.94A.535 does not purport to allow a court to reduce a period of community custody. The trial court erred in reducing the term of community custody.

D. Remedy

Hehn says that if we decide the trial court erred in sentencing him, we should remand with instructions that state the trial court may impose a mitigated sentence that is legally supportable.

> Our Supreme Court has held that if an appellate court determines that all of the factors relied upon by the trial court are insufficient to justify an exceptional sentence, the court will remand for resentencing within the standard range. However, where the appellate court determines that the trial court misconstrued and misapplied the law, aside from the question of the sufficiency of the reasons given for an exceptional sentence, the court may reverse and remand for resentencing in accord with the legal principles stated in the court's opinion.

17

State v. Ha'mim, 132 Wn.2d 834, 847, 940 P.2d 633 (1997) (internal citation omitted) (overruled in part on other grounds by O'Dell, 183 Wn.2d at 698–99).

In light of the foregoing, we remand for the trial court to resentence Hehn, though it may apply an exceptional downward sentence in accord with the legal principles stated in this opinion. We also remand for the trial court to impose the full term of community custody required by RCW 9.94A.701(1).

Chun, J.

WE CONCUR:

Andrus, A.C.J.        Mann, C.J.